**Earnest Earl WYATT, Appellant,**

v.

**INTERSTATE & OCEAN TRANSPORT COMPANY (formerly Interstate Oil Transport Co.), Defendant,**

**and**

**Inland Boatmen's Union of the Seafarer's International Union of North America, Atlantic, Gulf Lakes and Inland Waters District, A.F.L.–C.I.O., Appellees.**

**Earnest Earl WYATT, Appellee,**

v.

**INTERSTATE & OCEAN TRANSPORT COMPANY (formerly Interstate Oil Transport Co.), Defendant,**

**and**

**Inland Boatmen's Union of the Seafarer's International Union of North America, Atlantic, Gulf Lakes and Inland Waters District, A.F.L.–C.I.O., Appellants.**

Nos. 78–1810, 78–1811.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1979.

Decided May 16, 1980.

Wayne Lustig, Norfolk, Va. (Campbell, Lustig & Hancock, Norfolk, Va., on brief), for appellant.

C. Arthur Rutter, Jr., Norfolk, Va. (Breit, Rutter & Montagna, Norfolk, Va., on brief), for appellees.

Before FIELD, Senior Circuit Judge, MURNAGHAN and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

This is an appeal by Earnest Earl Wyatt, hereinafter Wyatt, from a judgment of the District Court for the Eastern District of Virginia, Norfolk Division, wherein the trial court granted a judgment notwithstanding the verdict to the defendant Inland Boatmen's Union of the Seafarer's International Union of North America, hereinafter the union, after a jury verdict in favor of Wyatt, the plaintiff below. Wyatt also appeals the trial court's conditional ruling granting the union a new trial on the basis of inadequate evidence to support the verdict and excessive damages.

Wyatt, a former employee of Interstate and Ocean Transport Company, hereinafter employer, injured his back in 1973 during his employment as a deck hand on a tug boat. He was operated on for a ruptured lumbar disc in 1974 and returned to work in

October of that year. In early 1976, while still employed by the employer as a deck hand, Wyatt filed suit against the employer for personal injuries stemming from the 1973 accident. In late December, 1976, Wyatt settled his personal injury action with his employer. On January 4, 1977, the employer discharged Wyatt and the next day Wyatt notified a union official, John Fay, of his termination and requested grievance representation by the union. Fay requested a grievance meeting with the employer representatives, which was held seven days after the discharge. After this meeting with the employer, Fay, in response to an inquiry from Wyatt, informed him that his complaint was without merit and the grievance would not be processed. Wyatt commenced this action against the union and the employer in July, 1977, alleging wrongful discharge by the employer and the failure to provide fair representation of his grievance by the union. Wyatt dismissed the employer from the action during the trial.

The employer had the right, under the collective bargaining agreement, to discharge any employee who was not physically able to perform his assigned duties, and the union had the obligation to refer only physically fit employees to the employer. During the discovery stage of Wyatt's personal injury action, there were statements both by Wyatt and his doctor that he was permanently disabled. One of Wyatt's physicians, Dr. Kirk, indicated a 25% permanent partial disability. Wyatt, in response to interrogatories, stated that he had permanent disability in his back and left leg. He stated he had been working as a deck hand although in pain. At the grievance meeting between Fay and the employer representatives, the employer had possession of these medical reports and, in addition, a medical report from a doctor previously retained by the employer (Dr. Neal) who found no permanent disability. At the meeting Fay was shown only the Kirk report and told that Wyatt had been working "in pain." Fay made no request to review other medical information in the Wyatt file. On this basis Fay determined there was no merit to Wyatt's requested grievance.

After trial, with the union as the sole defendant, the jury found for the plaintiff Wyatt in the amount of $50,000. The court granted the union's Rule 50(b), F.R.Civ.P. motion for judgment notwithstanding the verdict and, as required by Rule 50(c), F.R. Civ.P., ruled on the motion for a new trial. It conditionally ordered a new trial both on the ground that the verdict was contrary to the clear weight of the evidence and that it was excessive. Wyatt appeals from both the judgment notwithstanding the verdict and the order granting a new trial. We reverse that portion of the trial court's ruling granting the judgment notwithstanding the verdict and affirm the order granting a new trial.

■ A union's duty to fairly represent is to "serve the interests of all members without hostility, discrimination, arbitrariness or capriciousness toward any. Although a union may exercise discretion in representing employees, it must act with complete good faith and honesty." *Harrison v. United Transportation Union*, 530 F.2d 558, 561 (4th Cir. 1975), *cert. denied*, 425 U.S. 958, 96 S.Ct. 1739, 48 L.Ed.2d 203 (1976). A breach of a union's statutory duty of fair representation occurs "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). *See also International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979).

In *Griffin v. International Union, United Automobile A. & A. I. W.*, 469 F.2d 181 (4th Cir. 1972), this Court said:

A union must conform its behavior to each of these three separate standards. First, it must treat all factions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbi-

trary conduct. Each of these requirements represent a distinct and separate obligation, the breach of which may constitute the basis for civil action.

*Id.* at 183.

■ To sustain a member's action against his union under *Griffin* standards, it is not necessary that the union's breach be intentional. A union representative could be so indifferent to the rights of members or so grossly deficient in his conduct purporting to protect the rights of members that the conduct could be equated with arbitrary action. *Baldini v. Local Union No. 1095*, 581 F.2d 145 (7th Cir. 1978); *Robesky v. Qantas Empire Airways, Lts.*, 573 F.2d 1082 (9th Cir. 1978); *Hughes v. International Brotherhood of Teamsters, Local 683*, 554 F.2d 365 (9th Cir. 1977); *Ruzicka v. General Motors Corporation*, 523 F.2d 306 (6th Cir. 1975); *DeArroyo v. Sindicato de Trabajadores Packinghouse, AFL–CIO*, 425 F.2d 281 (1st Cir.), *cert. denied*, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970). In the final analysis the right of an individual employee to have his grievance processed depends on the provision of the applicable collective bargaining agreement and the facts of each case.

■ Wyatt, during his initial contact with Fay, indicated a suspicion that the employer had discharged him due to his civil action against it. In Wyatt's telephone. calls to Fay, he pressed his contention that he was able to work. Considering the normal adversary relationship between union representatives and employer representatives in processing grievances, Fay was required to do more than pliantly accept the employer's version of Wyatt's ability to work. Liability for failure to represent, however, cannot be predicated upon simple negligence but must reach the degree of culpability discussed in *Griffin, Harrison* and *Vaca*.

■ A union's violation of its discretionary duty must be considered under the circumstances of each case to determine if it is hostile, discriminatory, arbitrary or capricious. Although such broad standards of conduct are, in the final analysis, a determination of law, underlying questions usually depend on jury findings of fact under proper instructions by the Court.

■ We consider first the judgment notwithstanding the verdict. In ruling on such motion the trial court must consider the record as a whole and in the light most favorable to the party opposed to the motion. If there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a verdict for the nonmoving party, the motions should be denied, and the case submitted to the jury. *Mays v. Pioneer Lumber Corporation*, 502 F.2d 106 (4th Cir. 1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975); *Grooms v. Minute-Maid*, 267 F.2d 541 (4th Cir. 1959); *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc).

■ The evidence at trial, viewed in its entirety and in the light most favorable to Wyatt, is susceptible to a number of permissible inferences including alternative inferences that Fay was only negligent; that he was inept; that he arbitrarily rejected Wyatt's claim out of frustration with Wyatt; that he was overly friendly with the employer; or that he simply did not relish grievance work. Some of these would sustain a finding of a breach of the duty to fairly represent, some would not. The evidence was also susceptible of inferences that Wyatt was physically able to perform his work. If the jury believed this, they could have found that the employer wrongfully discharged him. The trial court, therefore, erroneously granted the defendant's motion for a judgment notwithstanding the verdict.

■ The motion for a new trial on the merits, however, requires a review of the evidence under a different standard. Under Rule 59, F.R.Civ.P., a trial court may weigh the evidence and consider the credibility of the witnesses. Indeed, a trial judge has a duty to set aside a verdict and grant a new trial even though it is sup-

ported by substantial evidence, "if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false or will result in a miscarriage of justice . . . ." *Williams v. Nichols*, 266 F.2d 389, 392 (4th Cir. 1959), *citing, Aetna Casualty & Surety Company v. Yeatts*, 122 F.2d 350 (4th Cir. 1941). It is not necessary, however, to consider whether under the "new trial" standards the jury verdict should have been set aside as contrary to the clear weight of the evidence. The court's action granting a new trial was correct because the jury was improperly instructed on the question of liability and reached their decision under an incomplete theory of law.

 The trial court refused the union's request to instruct the jury that Wyatt must prove both a wrongful discharge by the employer and a failure to fairly represent by the union. There is no question but that liability of a union for failure to present a grievance for wrongful discharge is contingent upon a finding that the disputed discharge by the employer was indeed wrongful. *Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970); *Vaca v. Sipes, supra.*

The court's action granting a new trial for excessiveness of damages was also correct. The court instructed the jury, in part, "You shall . . . fix his damages in such amount as . . . will fairly and justly compensate him for his loss of wages which reasonably arose as a result of the union's breach of duty . . . should you find your verdict for the plaintiff you will allow $600.00 for medical expenses resulting from the lapse of medical insurance coverage . . . ." This was an erroneous instruction inasmuch as the union, on the facts in this case, is not liable to Wyatt for his loss of wages. The rule stated by the Supreme Court in *Vaca* has been reiterated in *Czosek, supra*, and *Foust, supra*. In *Vaca*, the Court said:

A more difficult question is, what portion of the employee's damages may be charged to the union: In particular, may an award against a union include, as it did here, damages attributable solely to the employer's breach of contracts? We think not. Though the union has violated a statutory duty in failing to press the grievance, it is the employer's unrelated breach of contract which triggered the controversy and which caused this portion of the employee's damages. The employee should have no difficulty recovering these damages from the employer, who cannot, as we have explained, hide behind the union's wrongful failure to act; in fact, the employer may be (and probably should be) joined as a defendant in the fair representation suit, as in *Humphrey v. Moore*, supra. It should be a real hardship on the union to pay these damages, even if the union were given a right of indemnification against the employer. With the employee assured of direct recovery from the employer, we see no merit in requiring the union to pay the employer's share of the damages.

The governing principle, then, is to apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any of those damages caused by the union's refusal to process the grievance should not be charged to the employer. In this case, even if the union had breached its duty, all or almost all of Owens' damages would still be attributable to his allegedly wrongful discharge by Swift. For these reasons, even if the union here had properly been found liable for a breach of duty, it is clear that the damage award was improper.

386 U.S. at 196–98, 87 S.Ct. at 920–921.

 Under any view of the evidence, Wyatt's loss of wages was caused by his discharge. If it was wrongful, he has an action against the employer and it is unfortunate if he has foreclosed that by his dismissal of the employer at trial. Damages attributable to the employer can be recovered only against it unless the union, by its actions, has contributed to the wrongful discharge or exacerbated Wyatt's loss or diminution of wages, beyond that for which

the employer could be charged. There is nothing in the record to indicate either possibility. There can be no doubt that the jury's damage conclusions were based on loss of wages and were fatally excessive.

We, therefore, reverse that part of the lower court's decision granting the judgment notwithstanding the verdict, and affirm and remand for a new trial on the basis of the principles discussed in this decision.

*AFFIRM IN PART; REVERSE IN PART.*