Terry **CRANFORD**, Plaintiff,

v.

**Jack Kenneth MOORE, Chief of Concord, North Carolina Police individually and in his official capacity, Defendant.**

No. C–81–704–S.

United States District Court, M.D. North Carolina, Salisbury Division.

May 2, 1984.

---

Michael A. Sheely, of Sheely & Gronquist, Charlotte, N.C., for plaintiff.

Martin N. Erwin, of Smith, Moore, Smith, Schell & Hunter, Greensboro, N.C., for defendant.

## MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, Chief Judge.

This action came before the Court and a jury for trial on April 18–19, 1984. Plaintiff contended that he was fired from his job as a police officer for the City of Concord, North Carolina because of four letters he wrote in 1977 and 1978. He claimed that the termination was unlawful because his letter writing was conduct protected by the right to free speech under the first amendment. Defendant denied that the letter writing influenced the termination in any manner and contended that the motivation for the discharge was plaintiff's failure to enforce a city parking ordinance. Pursuant to Rule 50(a), Fed.R.Civ.P., defendant moved for a directed verdict at the close of the plaintiff's case and at the close of all the evidence. The Court reserved ruling on both motions and submitted the case to the jury.[1] The jury found for the plaintiff.[2] In open court defendant moved for judgment notwithstanding the verdict pursuant to Rule 50(b), Fed.R.Civ.P., and in the alternative moved for a new trial in accordance with Rule 59, Fed.R.Civ.P. The Court will grant the motion for judgment notwithstanding the verdict and will condi-

---

**1.** When all the evidence has been presented it is frequently the better and more efficient practice to reserve ruling on a directed verdict motion until the jury has reached a verdict. *Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Co.*, 427 F.2d 862, 873–74 (4th Cir.1970); 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2533 at 586 (1971).

**2.** The issues were answered by the jury as follows:

1. Were the letters written by plaintiff a substantial or motivating factor in the decision of defendant Moore to discharge plaintiff from employment as a police officer?

Answer: _____Yes_____
 (Yes or No)

2. If the letters written by plaintiff were a substantial or motivating factor in the decision to discharge him from employment, would defendant Moore have decided to discharge plaintiff even if the letters had not been written?

Answer: _____No_____
 (Yes or No)

3. If plaintiff was discharged from employment because of his letter writing, what amount of damages, if any, is plaintiff entitled to recover:

Answer: _____$5505.40_____
 (Amount)

tionally grant the alternative motion for a new trial.

■■■ Unquestionably, jury verdicts must be accorded great deference. While the Court is ultimately responsible for insuring that the law is properly applied to the facts of a case, it cannot substitute its view of the facts or its notion of what the verdict should be for that of the jury. However, in the rare situation when the jury verdict is not supported by substantial evidence, the Court is bound to exercise its authority under Rule 50, Fed.R.Civ.P., to set the verdict aside.

■■■ The test on a motion for judgment notwithstanding the verdict, like the one for a directed verdict, is whether, considering the record as a whole in the light most favorable to the nonmovant, there is substantial evidence to support the verdict. *Brady v. Allstate Insurance Co.*, 683 F.2d 86, 89 (4th Cir.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 605 (1982); *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 891 (4th Cir.1980). The nonmovant is entitled to the benefit of all inferences which are fairly supported by the evidence. *Howard v. McCrory Corp.*, 601 F.2d 133, 137 (4th Cir.1979).

Plaintiff was a patrolman for the Concord Police Department from March 1973, until November 7, 1978. Although he was at times assigned to motorized patrol, plaintiff's primary duty at the time of his discharge was to patrol downtown Concord on foot. While on patrol, plaintiff was responsible for enforcing city parking ordinances covering on the street parking and parking lots.

Plaintiff's personnel record contains notations of various infractions and incidents which occurred throughout the period of his employment. Defendant's Exhibit Nos. 1, 3.[3] Defendant conceded that with the exception of the parking lot incident discussed *infra*, none of these matters warranted termination.

On September 15, 1977, plaintiff wrote a letter to Mr. W.C. Hammans, Concord City Manager, concerning overtime pay for police officers. Plaintiff's Exhibit No. 1 at 1. Plaintiff testified that he hand delivered a copy of this letter to defendant.

On July 24, 1978, *The Concord Tribune*, a local newspaper, published a letter written to its editor by plaintiff proposing that the method of electing the Concord Board of Aldermen be changed from city wide election of each representative to district or ward election of representatives. Plaintiff referred to the city aldermen as having "power-hungry prestige seeking egos." Plaintiff's Exhibit No. 1 at 4.

The same newspaper published a second letter from plaintiff on August 8, 1978. It criticized a decision made by the board of aldermen concerning a planned nuclear power project. Plaintiff's Exhibit No. 1 at 5.

The third and final of plaintiff's published letters responded to a previously published letter authored by someone unrelated to this case. In this letter plaintiff stressed the importance of open evaluation and criticism of the Executive Branch of the United States Government. Plaintiff's Exhibit No. 1 at 3. Plaintiff wrote the letter sometime prior to September 1, 1978, and it was published September 17, 1978.

Plaintiff testified that sometime between September 8 and 17, 1978, defendant, while on duty, called plaintiff into his office and told him that the board of alderman was thinking about laying off some police officers if the letter writing did not stop. Defendant denied ever speaking to plaintiff about the letters or discussing the matter with any of the aldermen, singly or as a board. Plaintiff wrote no more letters.

---

**3.** The noted incidents include: unexcused absence, June 22, 1973; attitude complaints from public, December 10, 1975 and April 7, 1977; negligent damage to motor vehicle, March 1, 1977; failure to attend Department of Motor Vehicles hearing, June 3, 1977; failure to turn in property taken from a prisoner, January 6, 1978; unauthorized card playing, April 1978; breach of chain of command, July 7, 1978; dress code violations, September 1 and 2, 1978; and patrolling with textbook in hand, October 13 and 19, 1978. Defendant's Exhibit No. 3.

Defendant offered evidence that he suffered a heart attack on August 25, 1978, and consequently did not return to work until October 4, 1978, when he reported on a part time basis. He resumed working full time on October 19, 1978. A business attendance record of the Concord Police Department, received into evidence without objection by plaintiff, substantiates the testimony of defendant's witnesses. Defendant's Exhibit No. 4. On cross examination plaintiff denied any knowledge that defendant was absent from work with a heart attack. W.C. Brewer, a former police officer, testified in rebuttal for plaintiff that he recalls seeing defendant at the police department during the month of September 1978 after hearing that defendant had suffered a heart attack. Brewer acknowledged that defendant first returned to duty on a part time basis.

The city ordinance covering parking in one of the lots of plaintiff's downtown beat permitted free parking for two hours. In patrolling this lot plaintiff would write down the license number and location of every vehicle parked there in the morning and would check this list against cars parked in the lot two hours later. Cars parked in the same parking space were ticketed. Plaintiff testified that most of the cars in the lot on his second daily trip were also present two hours earlier but were parked in different spaces. Because he could not swear that those cars had not in the interim left the lot, plaintiff did not ticket them.

Plaintiff observed that the section of the lot closest to the city business district was heavily utilized while the opposite section was infrequently used. He also observed that a significant number of the spaces located in the prime section of the lot were used by employees of nearby businesses, apparently the same persons whose cars were routinely shuffled to other spaces in the lot in two hours intervals. In October 1978, plaintiff devised and implemented a plan to accommodate the downtown employees' quest for ticket free parking and the desire of downtown patrons and visitors to park as close to the business district as possible. He would not ticket the employees' cars parked in the portion of the lot for which there was a lower demand even though they remained there all day. The parties disputed whether plaintiff obtained approval prior to implementing this plan. Plaintiff testified that he discussed his idea with two of his superiors, Sargeant Charles R. Sheppard and Lieutenant Overcash, and received "positive" responses from each. Both men testified that such discussions never occurred and denied approving plaintiff's plan. Lieutenant Overcash explained that he first learned of plaintiff's improvisation of the parking lot ordinance through a disgruntled downtown employee who had been ticketed in contravention of plaintiff's agreement.

Defendant testified he received complaints that some illegally parked cars were being ticketed while others were not. He personally observed the lot four times daily on October 24–27, and 31, 1978. Having ascertained that some cars parked in part of the lot in excess of two hours were never ticketed, he instructed Captain George H. Smith to direct plaintiff to strictly enforce the two hour parking ordinance. Defendant stated that he first learned of plaintiff's agreement not to ticket certain vehicles on November 6, 1978. In the defendant's eyes, plaintiff had unilaterally decided to favor some citizens over others in blatant violation of the ordinance. He terminated plaintiff on November 7, 1978.

Following termination, plaintiff requested and received a review hearing. He was represented by the same counsel who appeared for him throughout this action. At this hearing plaintiff made no claim that the letters motivated his discharge in any manner. The hearing decisionmaker upheld the termination.[4]

The determination of whether an employment decision made under color of state law violates an employee's first amendment right to free speech is gov-

4. Before trial plaintiff dropped all due process challenges to the hearing.

erned by *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The plaintiff bears the initial burden of proving that his speech addressed matters of legitimate public concern and that it was a substantial or motivating factor in the employment decision. If this burden is satisfied, the burden switches to the defendant employer to show that he would have reached the same decision "even in the absence of the protected conduct." 429 U.S. at 287, 97 S.Ct. at 576, 50 L.Ed.2d at 484. The ultimate issue of whether the conduct is entitled to constitutional protection is a question of law resolved through a balancing of interests. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Kim v. Coppin State College,* 662 F.2d 1055 (4th Cir.1981).[5] Plaintiff failed to carry his burden of establishing that the letter writing was a substantial or motivating factor in his termination.

Defendant presented strong and convincing evidence that the meeting at which defendant was to have warned plaintiff about his letter writing did not occur. Testimony from defendant, five police officers, and defendant's wife, as well as the relevant department attendance record, tended to show that defendant was absent from the department recuperating from a heart attack at the time plaintiff testified he was warned. W.C. Brewer, who testified in plaintiff's rebuttal that defendant was "in and out" of the department in September 1978, at least acknowledged that defendant suffered a heart attack which necessitated his absence from work. In stark contrast to the rest of the evidence, plaintiff denied any knowledge that his chief, in a department with less than fifty employees, was out at any time with a heart attack. Nevertheless, whether the meeting actually occurred is a question of fact which turns on credibility resolutions beyond the scope of a motion for judgment notwithstanding

the verdict. For the purposes of this motion, the Court assumes that in September 1978, defendant informed plaintiff that the aldermen were considering some police department layoffs if the letter writing did not stop.

 Irrespective of the evidence regarding defendant's heart attack, the lack of substantial evidence supporting a causal inference between the letter writing and the termination directs that the judgment for plaintiff be set aside. Substantial evidence is evidence of such a quality and weight that fair minded persons in the exercise of impartial judgment could reasonably return a verdict for the nonmovant. *Wyatt v. Interstate Transport Co.,* 623 F.2d at 891. A crucial part of plaintiff's burden in this first amendment case was to prove the existence of a causal connection between the letter writing and the termination. Assuming that the September 1978 conversation with defendant occurred exactly as plaintiff stated, the evidence does not support a reasonable inference that the letter writing motivated the termination. Of the three letters, only one concerned the defendant. It was written almost fourteen months prior to the termination. Plaintiff's Exhibit No. 1 at 1. Two letters critical of the board of aldermen were published during the summer of 1978, four to six weeks prior to plaintiff's meeting with defendant. That the aldermen might channel their dissatisfaction or anger at a police officer through the police chief is not entirely unreasonable. However, any reasonableness of an inferred nexus between these letters and the termination is diminished by the intervening time lapse.

The third letter was written before, but appeared in the paper after, the alleged meeting. Plaintiff agreed to stop the letter writing and in fact wrote no more. Hence, the aldermen and/or defendant must have been satisfied that the meeting achieved its intended result. At that point no reason,

---

**5.** Evidence that the employee's conduct materially impaired the operation of the defendant's workplace must be resolved by a jury. Defend-

ant offered no evidence to support such an issue. *Kim v. Coppin State College,* 662 F.2d 1055, 1062 (4th Cir.1981).

legitimate or otherwise, existed for the plaintiff's discharge.

The last letter was completely unrelated to the defendant or board of aldermen. It did address a matter of legitimate public concern and was within the ambit of the first amendment. However, its content lends no support to the already paltry inference and, therefore, is immaterial on the motivational issue. Finally, approximately two months passed between the alleged meeting with defendant and plaintiff's termination. This is a significant time lapse and diminishes any remaining reasonableness of the inference.

In sum, plaintiff's case depends on finding that it is fair and reasonable to infer that his termination was substantially motivated by letters written some two to four months earlier. From the evidence in this case, such an inference is plainly illogical and without adequate support. The one bit of evidence linking the letters to the termination is the nebulous warning defendant allegedly gave plaintiff, ostensibly at the direction of others, some two months prior to the discharge. This is not enough. *See Kim v. Coppin State College,* 662 F.2d at 1059 (although plaintiff is entitled to benefit of all reasonable inferences, the court should not "strain" to find the inferences necessary to support plaintiff's position). The only first amendment conduct which occurred thereafter could not have offended defendant or the board of aldermen. No motivationally relevant conduct on behalf of plaintiff or defendant took place between the alleged warning and the termination.[6] Even if the letters planted the potential for a causal connection between the protected conduct and future unlawful employment action, the parties' inaction coupled with the passage of time suggests only that on November 7, 1978, any causal

nexus was " 'so attenuated as to dissipate the taint.' " *Neal v. Howell,* 689 F.2d 473, 477 (4th Cir.1982) (citation omitted). The evidence substantially supports but one reasonable conclusion. No fair minded trier of fact could in the exercise of impartial judgment reasonably conclude that the first amendment protected letter writing of plaintiff was a substantial or motivating factor in the November 7, 1978 discharge.

■ Why the jury answered the issues in favor of plaintiff in spite of the lack of evidence linking the letters and the termination is not subject to precise analysis. On the evidence and instructions submitted, it could have only speculated that the letters substantially motivated the decision. Jury verdicts, however, may not be based on speculation or conjecture. Perhaps the jury felt plaintiff was treated unfairly for devising and implementing a solution to a parking problem, in spite of the governing zoning ordinance. If that is the case, the jury disregarded the Court's instructions.[7] A verdict may not be influenced by the jury's sympathy for the plaintiff. *Law v. Virginia Stage Lines, Inc.,* 444 F.2d 990, 994 (D.C.Cir.1971) ("[T]he law in its wisdom has invested trial judges with the power to correct juries who base their verdicts on considerations not embodied in the evidence."); *Jacobs v. College of William and Mary,* 517 F.Supp. 791, 794 (E.D. Va.1980).

■ Rule 50(c), Fed.R.Civ.P., directs the Court to rule on defendant's alternative motion for a new trial in the event that the granting of the motion for judgment notwithstanding the verdict is reversed on appeal. In spite of the somewhat awkward application of the rule that results from a meritorious motion for judgment notwithstanding the verdict and the appellate au-

---

6. Of course, during October and November 1978, plaintiff implemented his plan for the parking lot which defendant testified resulted in plaintiff's immediate termination.

7. The Court instructed that:
 While an employee may not be discharged in retaliation for the exercise of protected rights, defendant Moore has the authority and re-

sponsibility to make decisions which he feels are in the best interest of the police department. It is not the role of the jury to second guess the police chief acting within his authority or to rectify decisions which may to the jury seem lacking in wisdom or compassion.

thority to order either entry of the judgment or a new trial, the Court is bound to conditionally rule on the alternative motion for a new trial. *Mays v. Pioneer Lumber Corporation*, 502 F.2d 106, 109 (4th Cir. 1974).

Defendant moved for a new trial on the ground that the verdict is contrary to the clear weight of the evidence. The Court agrees. Plaintiff's case is based on an unreasonably attenuated inference between a heavily controverted conversation regarding letters written by plaintiff and his termination two months thereafter. Defendant presented strong evidence that he never spoke with plaintiff about any letters, that he was absent from work at the time plaintiff contends he transmitted a warning from the Board of Aldermen about the letters, and that he terminated plaintiff after his own personal investigation and conclusion that plaintiff was intentionally discriminatorily enforcing the city parking ordinance. The clear weight of the evidence favors judgment for defendant. A verdict for plaintiff would be a gross miscarriage of justice.

IT IS, THEREFORE, ORDERED that defendant's motion for judgment notwithstanding the verdict be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's alternative motion for a new trial be, and the same hereby is, GRANTED subject to appellate reversal of the granting of defendant's motion for judgment notwithstanding the verdict.

A Judgment will be entered accordingly.