**W.C. CHESSER, et al.,
Plaintiffs-Appellants,**

v.

**BABCOCK & WILCOX, et al.,
Defendants-Appellees.**

No. 83–8718.

United States Court of Appeals,
Eleventh Circuit.

Feb. 27, 1985.

Rehearing and Rehearing En Banc
Denied April 1, 1985.

---

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

Edward E. Boshears, Brunswick, Ga., for plaintiffs-appellants.

William A. Ziegler, New York City, Richard M. Scarlett, M. Lynn Frey, III, Brunswick, Ga., for Babcock & Wilcox and Pension Bd. of Babcock.

Steve A.J. Bukaty, Kansas City, Kan., for Inter. Brotherhood & Local 901.

# 1572

Before TJOFLAT and JOHNSON, Circuit Judges and DUMBAULD *, District Judge.

DUMBAULD, District Judge:

Stripped to its essentials,[1] the case at bar discloses that plaintiffs-appellants are unfortunate victims of economic forces who lost their jobs by reason of plant closing shortly before they would have been eligible for an early pension based on length of service. Their union entered into an agreement with their employer regarding the plant closing, in an effort to mitigate the impact of the closing. The agreement was beneficial to the majority of employees, who, unlike plaintiffs, had no immediate prospects of qualifying for a pension at all, by providing severance pay. The union had in vain at first made a bona fide effort to obtain provisions that would have enabled plaintiffs to obtain greater pension benefits. But the company would not agree. The employees, including plaintiffs, ratified the agreement.[2] The employer had legitimate economic reasons for closing the plant. After lengthy discovery and hearings and several thorough opinions, Chief Judge Alaimo denied relief against both the company and the union by granting defendants' motion for summary judgment. We affirm.

## I—History of Proceedings

Plaintiffs-appellants, forty employees of the Babcock & Wilcox Company[3] having more than 25 but less than 30 years of service at the plant, were represented by Local 901 of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers.[4] Plaintiffs were covered by a pension plan which provided for Special Early Retirement upon completion of 30 or more years of service.

On February 19, 1982, the company and the union entered into an agreement regarding the labor relations aspects of the closing of the plant, which was to be shut down permanently. It was closed on May 21, 1982. The agreement provided for severance pay, to receive which the employee had to sign a statement that his employment, seniority, and service were being terminated for all purposes. No provision was made for crediting additional time to those nearing thirty years of service, so as to permit them to receive their Special Early Retirement pension.

## II—Legal Issues

■ It should be noted *in limine* that the employer's pension plan did not violate the vesting standards of ERISA (Employee Retirement Income Security Act of September 2, 1974, 88 Stat. 882, 29 U.S.C. § 1001 *et seq.*) by effectuating "forfeiture" con-

---

* Honorable Edward Dumbauld, U.S. District Judge of the Western District of Pennsylvania, sitting by designation.

1. The docket sheet lists 354 items. The case was begun in the Superior Court of Glynn County, Georgia, and removed upon petition of the employer, Babcock & Wilcox Company, under 28 U.S.C. § 1441. The District Court's opinion of January 17, 1983, found removal to be proper. This conclusion is not contested on this appeal; nor is an order and opinion of March 8, 1983, denying a motion by the company for summary judgment, involved in the instant appeal, which is from the order and judgment of September 29, 1983, as supplemented, to comply with F.R. C.P. 54(b), by the order and judgment of October 6, 1983. (There remained pending a relatively unimportant issue relating to processing plaintiffs' claims as a grievance. Since the grievance machinery ceased to function after the plant closed, and could not in any event provide the remedy of "reforming" the collective

bargaining agreement, which is the main thrust of plaintiffs' case, the present appeal is not premature.)

2. Against the employer, plaintiffs seek equitable "reformation" of the agreement and the pension plan, so as to enable them to qualify for benefits not yet vested, and also charge fraudulent representations to induce plaintiffs to ratify the agreement. Against the union they charge unfaithful representation and favoritism on behalf of the majority of employees who would benefit by receiving severance pay.

3. Hereinafter sometimes referred to as "the company" or the employer.

4. Hereinafter referred to as "the union." The international union with which Local 901 is affiliated was dismissed (properly, in our opinion) by the order and judgment of September 29, 1983. At the same time the company's Pension Board was also dismissed as a defendant.

trary to the requirements of § 203(e), of the Act, 29 U.S.C. § 1053. That provision prohibits forfeiture of an employee's "normal retirement benefits"[5] upon the attainment of "normal retirement age."[6] Since plaintiffs have over 25 years of service, and have not qualified for the Special Early Retirement requiring 30 years of service, they are entitled to normal benefits upon reaching 65. The plan also provides that at age 55 optional benefits are payable, subject to actuarial reduction to reflect the longer period of expected payment. The plaintiffs have not been deprived of the normal benefits available to them at ages 55 or 65. All that they have lost are the special benefits provided for employees having 30 years of service. They contend that somehow it is unequitable to enforce the thirty year requirement. But when a plan exceeds the minimum requirements of ERISA, the employer is acting *ex gratia* with respect to such excess coverage, and is liable only for such benefits as are voluntarily agreed to by the employer and are specified in the terms of the plan, and the employee must comply with the terms of the plan in order to be entitled to such benefits.

■ Appellants' contention that they are entitled to credit for additional time or benefits on estoppel grounds by reason of misleading statements by company representatives is equally unavailing. Their claim founders on the element of detrimental reliance which is an essential ingredient of estoppel. The only circumstances advanced in support of this requirement is their assertion they would have consulted a lawyer sooner, and would have opposed ratification of the plant-closing agreement, if they had not been lulled into inaction by the misleading statements that additional credit or benefits could be expected.

But these facts do not constitute genuine detriment such as is requisite to support an estoppel. Timely consultation of a lawyer brings no fruit if the client has a weak case

nor would appellants' opposition have prevented ratification of the agreement when a majority of the employees, being younger and tempted by the prospect of severance pay, favored acceptance of the agreement. And even if appellants had convinced the union to vote against ratification, they would still have been no closer to getting the additional credit and benefits they sought. They need the company's assent in order to win any advantages in excess of the normal benefits guaranteed by ERISA.

■ Moreover, appellants fare no better in their claim that the union did not fairly represent them. The District Court found that in fact during negotiations for the agreement a proposal was made by the union to grant an additional year of service credit to all employees having 25 or more years of service. This finding was supported by substantial evidence and is obviously not vulnerable as "clearly erroneous" under Rule 52(a) F.R.C.P.

■ As a matter of law, we agree with the District Court that the union was not required to insist on extra benefits for appellants to the bitter end at the expense of frustrating the desires of a majority of the members for severance pay. We accept the doctrine of those circuits which hold that the union must be mindful of the interest of all its members and in good faith has discretion to make concessions on some matters in order to win others. *Buchholtz v. Swift & Co.*, 609 F.2d 317, 327 (8th Cir.1979); *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 890–91 (4th Cir.1980). It was not arbitrary or invidious discrimination against appellants for the union to abandon pursuit of the demand of a year's additional credit for appellants in order to conclude an agreement where, in the words of the District Court, "it was successful in negotiating for all union members, both young and old, a $2,000,000 benefits package consisting of

---

**5.** Defined in 29 U.S.C. § 1002(22) as "the greater of the early retirement benefit under the plan, or the benefit under the plan commencing at normal retirement age."

**6.** Defined in 29 U.S.C. § 1002(24) as age 65, unless the plan specifies an earlier normal retirement age, or unless at age 65 the employee has not participated in the plan for a ten year period.

severance pay and continued health insurance."

As a meritorious proposal for future legislation or collective bargaining much can be said for appellants' position that if after 25 years of service they come within one year or two of attaining the 30 years of service necessary to obtain certain early retirement benefits, they should be entitled to receive a proportionally reduced benefit of twenty-nine or twenty-eight thirtieths of what they would obtain upon fulfilment of the 30 year requirement. But under the facts of the case at bar and the existing law, theirs is a losing cause. One can only lament, *Dura lex sed lex.*

Accordingly the judgment of the District Court is

AFFIRMED.