842 F.2d 1289
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Marshall H. BROOKS, Ancillary Adm. & Per. Rep. for the
estate of Frances Kathleen Hughley, Plaintiff-Appellant,
v.
Donald Harvey TAYLOR, Sr.; Bell Trucking Inc., Defendant-Appellee.
 No. 86-3160.
 United States Court of Appeals, Fourth Circuit.
 Argued May 5, 1987.
Decided March 25, 1988.
 
 Jerome Peyser Friedlander, II (Mark P. Friedlander, Jr.; Friedlander & Friedlander, P.C., on brief), for appellant.
 William Joseph Carter (Brian H. Rhatigan; Carr, Goodson & Lee, on brief), for appellees.
 Before HARRISON L. WINTER, Chief Judge, HAYNSWORTH, Senior Circuit Judge, and JOHN R. HARGROVE, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Frances Hughley was a passenger in a 1966 Ford dump truck traveling southbound in the right-hand lane of Interstate 81 in Virginia around midnight. The Ford dump truck was struck from behind by a large tractor trailer rig. It was knocked off the roadway and burst into flames. Frances Hughley was killed.
 
 
 2
 This action for wrongful death was brought by the administrator of her estate against the driver and operator of the tractor trailer rig that hit the dump truck. It was tried to a jury. The jury brought in a verdict for the defendants. The plaintiff moved for a new trial, and this appeal follows denial of his motion.
 
 
 3
 We affirm.
 
 
 4
 There was testimony by Harold Bosserman, the driver of a tractor trailer rig that overtook and passed the 1966 dump truck shortly before the collision. He testified that the tail lights on the Ford dump truck were not very intense. They appeared to him to have been recessed and covered with dirt or salt. The Ford dump truck was proceeding in the right-hand southbound lane at no more than 50 miles per hour, and Bosserman testified that he overtook the dump truck more quickly than he would have liked because of the "lack of intensity" of the dump truck's tail lights. The left lane was clear at the time, however, and Bosserman was able to move his rig to the left and pass the dump truck.
 
 
 5
 Later, he saw the collision, or its effect, in his rearview mirror.
 
 
 6
 The defendant Taylor had been driving his tractor trailer rig for some ten hours, though he had stopped for a meal approximately four hours before the collision. He was within 15 miles of the place where he intended to stop for the rest of the night.
 
 
 7
 Taylor testified that another tractor trailer rig passed him. When clear, the driver of the other rig flashed his right turn signal indicating an intention to pull back into the right-hand lane in front of Taylor. Taylor testified that it was customary for truckers to respond to such signals by flashing lights to indicate that the passing rig was in fact clear of the other rig. Taylor testified that he reached to flash that confirming signal to the passing truck driver when he saw a bright light in his right-hand rearview mirror. As he glanced at that bright light, he hit the rear of the 1966 Ford dump truck. He had not seen the dump truck before the collision; he never saw its tail lights.
 
 
 8
 Morris Edward Thompson, a third truck driver, was proceeding in the right-hand southbound lane of I-81 when he observed one tractor trailer rig pass another one in front of him. He was driving at approximately 60 miles per hour and was approximately 1/2 mile behind the passing rig in front of him. He began to overtake the rig in the right-hand lane in front of him when he saw the accident happen. He, of course, never saw the dump truck until it was knocked off the road and burst into flames.
 
 
 9
 Thompson's testimony clearly supports Taylor's that another rig had just passed Taylor as the collision occurred.
 
 
 10
 The jury might well have believed that the presence of the lights on the passing truck may have made it more difficult to see the dim tail lights on the dump truck. Bosserman had seen those dim tail lights, but only when he was almost upon them, and he mentioned no other bright lights around that might have interfered with his sighting of the dump truck's tail lights.
 
 
 11
 Moreover, the jury may well have believed that Taylor's momentary glance at the bright lights in his right rearview mirror was not a negligent act.
 
 
 12
 In short, the testimony was susceptible to the view the jury apparently took, that the cause of the collision was the dimness of the tail lights on the dump truck and not a failure on Taylor's part to maintain a proper lookout and to keep a reasonable distance behind observable vehicles in front of him.
 
 
 13
 The district judge has a duty to set aside a verdict and grant a new trial even though the verdict is supported by substantial evidence "if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice." Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 892 (4th Cir.1980), quoting Aetna Casualty & Surety Coi. v. Yeates, 122 F.2d 350, 352 (4th Cir.1941).
 
 
 14
 The plaintiff contends that the district judge mistakenly applied the "substantial evidence" standard for granting judgment notwithstanding the verdict, but the district court disclosed the proper considerations. It recited all of the evidence about the dimness of the tail lights of the dump truck and Taylor's testimony that he had glanced into his right-hand rearview mirror. He thought the jury had found that Taylor had acted reasonably and concluded with an expression of his view that the verdict was not against the clear weight of the evidence or that manifest injustice had not been done.
 
 
 15
 The district judge applied the correct standard.
 
 
 16
 The plaintiff challenges the district court's assessment of the evidence, but we cannot conclude that denial of the motion for a new trial was an abuse of the district court's discretion. Abasiekong v. City of Shelby, 744 F.2d 1055, 1059 (4th Cir.1984).
 
 
 17
 Finally, plaintiff complains of the receipt of evidence that Taylor had received prolonged psychiatric treatment for the emotional injury he suffered as a result of the accident and the death of the plaintiff's decedent. The evidence came in without objection, however, and its receipt was not so manifestly prejudicial as to warrant a reversal of the judgment by us. Indeed, if Taylor's reaction to the accident had been callous, plaintiff would have attempted to prove that fact.
 
 
 18
 AFFIRMED.