872 F.2d 420
 14 Fed.R.Serv.3d 376
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Trent D. WRIGHT, Plaintiff-Appellant,
and
Robert O. Tyler, Plaintiff,
v.
TRW, INCORPORATED, Defendant-Appellee,
and
The Credit Bureau, Inc., Defendant.
 No. 88-2812.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 8, 1988.
Decided March 20, 1989.
 
 Bernard R. Corbett (Law Office of Bernard R. Corbett, Neal L. Thomas, Rowley & Watts, on brief) for appellant.
 Robert Ronold Sparks, Jr. (Herge, Sparks, Christopher & Biondi, on brief) for appellee.
 Before MURNAGHAN and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff, Trent D. Wright, brought an action for punitive damages[1] against TRW, Inc.[2] allegedly arising from a violation of the Fair Credit Report Act, 15 U.S.C. Sec. 1681 et seq. ("FCRA"). Wright's complaint alleged that TRW had, with neither lawful justification nor Wright's permission, intentionally sought out and obtained statutorily protected, private credit information about Wright in violation of FCRA. Wright was awarded partial summary judgment because the district court found that TRW had obtained credit information on Wright for an impermissible purpose. The case went to trial on the issues of whether TRW had intentionally committed the violations, and if so, the amount of punitive damages to be awarded. The trial judge denied Wright's motion for a directed verdict. The jury returned a verdict in favor of TRW, specifically finding that there was no willful violation by TRW. Wright then filed various post-trial motions[3] which the district court denied.
 
 
 2
 The credit violation arose from the following scenario. Wright and his wife, Brenda Gore, were married from 1984 to 1986. Wright worked as a golfing professional at a country club in Virginia. Gore worked at TRW as a "Manager of Government Relations" in its office in Arlington, Virginia.
 
 
 3
 Wright and Gore were having marital problems. Apparently things got worse during the summer of 1985 and Gore left their home after Wright physically assaulted her on July 15. She filed for divorce two days later and was granted a divorce on November 26, 1986 because of the abuse. A restraining order was issued against Wright.
 
 
 4
 Gore told Jack Carter, her supervisor at TRW, about the divorce and restraining order. He arranged for certain precautions so that Gore would be safe at work. Pat Duckworth, the security representative at TRW, also learned of Gore's problems. She told H. Lee Walters, her superior in security matters, who related the information to his assistant, James Crandall,[4] requesting that he check it out. Crandall, following standard procedures for background investigations, obtained a credit report. What was different about this one from the 15 to 30 background checks Crandall did a month was the fact that Wright was a non-employee. Nor was Wright applying for a job. When Crandall reported his findings to Walters, Walters apparently realized for the first time that he had caused Crandall to run a credit check on a non-employee. No further action was taken and the file was returned to the investigative office.
 
 
 5
 Wright learned of the credit check and complained to TRW. As a result of TRW's internal investigation of Wright's complaint, Walters was suspended for two weeks without pay. In response to a letter from Wright's attorney requesting details about the incident, TRW acknowledged the error and invited Wright to submit a claim for actual damages.[5] Wright did not pursue the invitation. Instead, he filed suit 17 months later, alleging no actual damages and seeking only punitive damages.
 
 
 6
 Wright and TRW disagree as to the definition of willfulness. Wright argues that willfulness is satisfied if it is established that the user acted "purposefully and with full knowledge of what [he] was doing." Yohay v. City of Alexandria Employees Credit Union, 827 F.2d 967, 972 n. 8 (4th Cir.1987). TRW disagrees and asserts that the proper definition is reflected in Yohay at 969-70 and in the district court's order granting partial summary judgment.[6]
 
 
 7
 TRW is correct, as was Judge Hilton in his instructions which he formulated on the basis of Yohay. Therefore, the correct legal definition of willfulness is "voluntarily and intentionally, and not because of negligence, mistake,...." Id.
 
 
 8
 The district court's rulings should be affirmed unless Wright can show, without weighing the credibility, that there is but one reasonable conclusion as to the verdict which favors him. Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 891 (4th Cir.1980). The evidence must be evaluated in a light most favorable to TRW and it is entitled to all reasonable inferences. Id.
 
 
 9
 Although there was testimony by Crandall that he had denied it was an accident, Walters specifically testified that TRW's employees engaged in the matter really did not think about what they were doing and merely overlooked the fact that Wright was a non-employee. The jury could certainly have inferred a lack of willfulness from the testimony, if it chose to credit it. Alternatively, the record supports a conclusion that TRW acted for an innocent reason, i.e., to assess a threat to one of its employees. The evidence showed that TRW took other prudent security steps such as installing locks on the office door and providing valet parking for Gore.
 
 
 10
 Although Wright did not plead, as part of his original claim, that TRW had negligently violated the FCRA, Wright attempted to amend the complaint after trial. At the hearing on Wright's post-trial motions, his counsel made an oral motion pursuant to Rule 15(b)[7] to amend the pleadings to conform to the evidence at trial that TRW had negligently violated the FCRA and requested nominal damages. The district judge denied the motion because it came too late and Wright had not requested nominal damages originally.
 
 
 11
 Rule 15(b) provides that a district court shall allow amendment to a complaint if the issue not raised in the pleadings has been tried by the parties' express or implied consent. Quillen v. International Playtex, Inc., 789 F.2d 1041, 1043 (4th Cir.1986). It is undisputed that TRW did not expressly consent to a trial on the negligence claim against it. Instead Wright asserts that not only did TRW raise negligence as a defense at trial, thus implying consent to amendment, but counsel for TRW admitted the negligence in his closing argument, so liability had been established. Therefore, Wright's argument concludes, the district court should have amended Wright's complaint and awarded nominal damages.
 
 
 12
 We have held that a trial court's decision not to amend the complaint because it determined that there was no consent to try the unpleaded issue is subject to reversal only for an abuse of discretion. Gladhill v. General Motors Corporation, 743 F.2d 1049, 1052 (4th Cir.1984). In addition, Wright has overlooked the Quillen case, 789 F.2d 1041, in which the plaintiff attempted to conform the pleadings to include a negligent testing cause of action. She had originally sued Playtex for, among other things, strict liability in tort seeking actual and punitive damages. In support of her claim for punitive damages, Quillen presented the evidence which also supported the unpleaded negligent testing claim. The district court denied the motion and we affirmed that decision on appeal, finding no abuse of discretion. Id. at 1043. We held that the introduction of the evidence did not imply consent to try an unpleaded issue merely because evidence relevant to a pleaded issue incidentally tended to establish an unpleaded claim. Id. at 1044.
 
 
 13
 The same must be true of defenses. TRW could not present its defense to the willfulness issue without introducing the evidence suggesting its negligence. Wright could have pleaded negligence in his complaint originally or before trial. He also had the option presented to him in TRW's letter suggesting that he file with it a claim for actual damages since it recognized the intrusion it had committed. Wright chose instead to sue for the chance of getting much more by proving a basis for punitive damages. Since he failed in the endeavor the district judge did not abuse his discretion in denying Wright's motion to amend the complaint.
 
 
 14
 Wright next complains that the district court erred in excluding evidence disputing his conduct towards his wife. Walters, the security person at TRW, testified that he knew of threats against Gore, and, therefore, told Crandall to investigate Wright. Wright then testified that he did not beat his wife on July 15, 1985, supposedly to make the point that the "security problem" which Walters acted upon never existed. However, as the district court explained, the real issue to which Wright should have testified was not whether or not Wright had actually abused Gore, but whether Walters could or should have reasonably relied on the information, true or not, in ordering the credit check. Wright's own testimony placed the truth of whether or not there was an assault in issue because Wright denied that he had assaulted his wife. After such testimony, it was proper for TRW's counsel to offer evidence to show that the assault had occurred. From discussions at the bench, Wright's attorney was forewarned that just that situation could arise, especially since punitive damages were the main issue, and they turned on a finding of willfulness. The judge did not improperly exclude rebuttal evidence on the issue of the actuality of the assault. The real issue was whether the assault was reported to Walters, not whether it actually occurred.
 
 
 15
 TRW's counsel mentioned the divorce decree and assault in his closing argument, as well. Wright cites Bowden v. McKenna, 600 F.2d 282 (1st Cir.), cert. denied, 444 U.S. 899 (1979), to support the position that TRW should not have been permitted to comment on the assault during closing argument because Wright was not permitted further to contest the fact of the assault. Yet Bowden is inapposite. There, the plaintiff successfully kept out of evidence testimony concerning the defendants' motives in doing what they did. (Here TRW had succeeded in putting on evidence about its motive). Then the plaintiff commented in closing argument on the lack of the evidence. The court in Bowden rightly held that plaintiffs could not have it both ways.
 
 
 16
 In the instant case, Wright opened the door on the issue of the truth about the assault. Although the district court cut off the relitigation of the issue, since it really was not the issue in the case, Wright should have known what he was getting into because the district court warned him of it. Furthermore, TRW states that Wright did not object to TRW's closing argument until now. He may not do so for the first time on appeal.
 
 
 17
 Wright also seeks nominal damages because he claims that a violation of a legal right was established, although no actual damages were alleged or proved.[8] Nominal damages may be awarded to acknowledge that a legal wrong has taken place. Section 1681n provides that a consumer may recover "in the case of any successful action to enforce any liability under this section [willful violation], the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C. Sec. 1681n(3). There was no successful action here, either in negligence which was not even pleaded or for the willfulness claim for which punitive damages alone were sought.
 
 
 18
 Wright relies on Russell v. Shelter Financial Services, 604 F.Supp. 201 (W.D.Mo.1984) where the court awarded nominal damages although plaintiff did not prove actual damages. However, the court had found, as a matter of law, that the defendant had willfully violated the FCRA. Thus, there was a successful action. In Wright's case there was no willful violation by TRW or so the jury believed. Therefore, Wright's action against TRW cannot be said to have been successful. Nominal damages are, hence, not proper and the district court did not err in denying them.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 The complaint alleged no actual damages
 
 
 [2]
 A second defendant was dismissed by stipulation
 
 
 [3]
 The three motions were for: (1) judgment n.o.v. (2) new trial, and (3) award of nominal damages and a grant of leave for Wright to submit an application for an award of attorney's fees on the basis of TRW's admitted violation
 
 
 [4]
 Crandall's notes of their discussion revealed the following, in part:
 On September 18, 1985, Pat Duckworth requested an inquiry of TRW employee Brenda Wrights [sic] ex-husband Trent D. Wright.
 The couple were married in December 1984 and separated in July 1985. The divorce is pending a court hearing.
 It is Pat Duckworths [sic] concern that Mr. Wright may be a threat to MS. Wright [sic] and the facility. It was requested that a credit check be conducted to determine any local addresses of the Subject or his present employer.
 Ms. Wright also suspects Mr. Wright may have other wives located in other areas of the country.
 App. 480 (emphasis supplied).
 
 
 [5]
 TRW would not reveal Walters' name but stated that the person responsible had been punished
 
 
 [6]
 The district court's order provided:
 
 
 [3]
 That punitive damages may be awarded to the plaintiff by the jury if the jury finds that the defendant's failure to comply with the Act had been willful, that is, if the Act had been violated voluntarily and intentionally and not because of negligence, mistake, accident or other innocent reason
 
 
 [4]
 That to award punitive damages under the Act the jury need not find that the defendant acted with malice or bad intention
 
 
 [7]
 Rule 15(b) states:
 When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment....
 
 
 [8]
 Wright apparently pursued this action so that he could also file an application for an award of attorney's fees