**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ernestine HORTON, d/b/a Pine View**
**Manor Nursing Home,**
**Defendant-Appellant.**

No. 78–3584.

United States Court of Appeals,
Fifth Circuit.

July 23, 1980.

---

Alton O. Paulk, Panama City, Fla., for defendant-appellant.

William Kanter, Linda Jan S. Pack, Dept. of Justice, Civil Div., App. Staff, Washington, D. C., for plaintiff-appellee.

Before WISDOM, RONEY and HATCHETT, Circuit Judges.

PER CURIAM:

Appellant appeals a judgement for the government in an action to recover Medicare overpayments made to appellant's nursing home from 1967 through 1969, when the nursing home was a "provider" facility under the Medicare Act, 42 U.S.C. § 1395 et seq. After two jury trials and two trials to a special master, the district court awarded the government $98,167, with interest from the date of judgment plus costs, in a final judgment which incorporated four partial summary judgments. Because we find that the district court did not abuse its discretion in granting a new trial or appointing a special master, correctly entered the four partial summary judgments, and was otherwise correct in its rulings, we affirm.

Appellant, Ernestine Horton, owned and operated the Pine View Manor Nursing Home which, from January, 1967, through May, 1969, was certified as a "provider of services" under the Medicare program. 42 U.S.C. § 1395x(v). Horton designated Aetna Life and Casualty Insurance Company (Aetna) to be her "financial intermediary." 42 U.S.C. § 1395h. Under this arrangement, Horton submitted bills for services to Aetna. Aetna then paid the bills in its capacity as agent for the Secretary of Health and Human Resources. Aetna also served as the Secretary's agent for purposes of auditing Horton. After reviewing and auditing the payments made to Horton during the two and a half year period Pine View Manor participated in the Medicare program, Aetna determined that certain costs claimed by Horton were not allowable and that overpayments had been made. Horton refused to pay the refund demanded by both Aetna and the Secretary. Settlement of the government's claim was discussed, and in November, 1974, a regional official of Health and Human Resources signed a purported release. Subsequently, the government contended, and the district court agreed, that this release was invalid because the regional official lacked authority to issue it.

The government filed suit in federal district court in 1975, seeking recovery of its overpayments.

The district court proceedings were exceedingly complex and protracted. The case involved an accounting dispute, contractual in nature. There were seven "line items" in Horton's cost report in dispute. The trial judge granted a jury trial over the government's objections. The judge cast his order for a jury trial such that the jury would make factual determinations on each of the seven line items and then the judge would incorporate these findings of fact into a final judgment which would have to be written with the aid of accountants. The judge eventually held two jury trials and two trials to a special master.

## FIRST JURY TRIAL

The first trial was held in 1977. Seven "line items" in the Pine View Manor cost reports were at issue: interest expense on loans; bad debts; Horton's compensation as owner-operator; general and administrative expense; depreciation for 1967 and 1968; depreciation at time of sale in 1969; "grossing-up" charges to equalize the cost for Medicare in non-Medicare patients in 1967. Extensive testimony was presented to explain the Medicare regulations and the contested "line items."

Shortly after retiring to consider its answers to interrogatories in the special verdict, the jury submitted to the judge a question evincing confusion on the computation of depreciation. A clarifying answer was sent to the jury, which then returned a special verdict. On six of the seven interrogatories, the jury's answers were favorable to Horton; the seventh question, Horton's compensation, was answered in the government's favor.

Judgment was not entered immediately since the government was required to recast Horton's cost reports in light of the verdict. One week after the verdict, the government moved the court to set aside the jury verdict and grant a new trial under Rule 59, Fed.R.Civ.P., on the grounds that the verdict included allowances not permitted by law, was inconsistent with the court's instructions, and was not supported by the weight of the evidence. The govern-

ment also suggested that the court reconsider its ruling granting a jury trial. Horton opposed the government's motion, but the judge granted a new trial, again with a jury. The new trial was limited, in that it would not reconsider the matter of Horton's compensation, the one issue on which it was apparent the jury had had sufficient evidence on which to make its determination.

## FIRST TRIAL TO THE SPECIAL MASTER

On the same day he ordered a new trial, the judge notified the parties of his conclusion that a special master should be utilized "to aid and assist the jury with the new trial of this case." A special master was appointed, with instructions to make specific findings of fact on the six "line items" for which a new trial had been granted. The special master examined the entire record and conducted a hearing, in which extensive testimony was presented on the Medicare cost reimbursement system and on Horton's cost reports. The special master's findings supported the government's allegations of overpayments on five of the six issues. On the sixth issue, interest expense, the special master's finding was favorable to Horton, but did not allow Horton the full amount claimed in her cost reports.

## PARTIAL SUMMARY JUDGMENT

After the special master's report was filed, the government moved for partial summary judgment, asserting that as a result of the special master's report and other record material, including Horton's responses to requests for admissions, there were no longer questions of material fact on certain issues, so that the government was entitled to judgment on those issues as a matter of law. While Horton filed a general objection to the special master's report, she did not specify any errors in the findings of fact and did not respond to the government's motion for partial summary judgment. The judge entered summary judgment for the government on several issues: bad debts; depreciation; general and administrative expense; gain on sale of nurs-

ing home; and a portion of the interest expense. The judge stated that this partial summary judgment would be included in the final judgment when it was entered.

## SECOND TRIAL TO THE SPECIAL MASTER

While seeking a partial summary judgment on several issues, the government had objected to the special master's finding on interest expense, asserting that the finding was not consistent with Medicare regulations. The interest expense was referred back to the special master for further findings, with instructions that Horton be permitted to introduce evidence to support her interest expense claim, if she chose to do so. The special master's second report and findings again specified that Horton should be allowed interest expense and recommended an amount slightly lower than that recommended in the first report.

## PARTIAL SUMMARY JUDGMENT

The court entered two summary judgments, one for the government and another for Horton, on the remaining portions of the interest expense issue. The government's objection to the special master's report was overruled and there was no further evidence to be presented on the issue. There was no further question as to material facts, so that the parties were entitled to judgments as a matter of law.

## SECOND JURY TRIAL

The only issue remaining for a jury determination was whether the government had been correct in "grossing-up" Horton's disparate charges for services in order to equalize the costs attributed to Medicare and non-Medicare patients during 1967. After a one day trial, the jury found that the "grossing-up" procedure had been correct.

## FINAL JUDGMENT

The court entered a final judgment summarizing the complex proceedings and issues in the case. That order incorporated the prior partial summary judgments, as well as interlocutory rulings on crucial matters such as the mode of trial. The final judgment, based upon the special jury verdicts and decisions by the court, awarded the government $98,167 with costs and interests from the date of judgment.

On this appeal, Horton primarily argues for reinstatement of the first jury verdict, claiming that the trial judge abused his discretion. Horton also questions the partial summary judgments for the government, claims that the judge erred in appointing a special master, and disputes the date from which interest is to run.

I

■ In this circuit, "the grant or denial of a motion for a new trial is within the sound discretion of the trial court and will not be disturbed absent a clear showing of abuse of discretion." *Valley View Cattle Co. v. Iowa Beef Processors, Inc.*, 548 F.2d 1219, 1220 n.2 (5th Cir. 1977). This court gives an order granting a new trial "a somewhat broader review" than an order denying a new trial, but:

[T]he District Court Judge's discretionary power is still given the deference required by his presence at the trial and his duty to see that there is no miscarriage of justice. The recent articulations of a somewhat closer review are directed to assuring that the District Court Judge does not merely substitute his judgment for that of the jury and thereby deprive the litigants of their right to a jury trial.

*Love v. Sessions*, 568 F.2d 357 at 361 (5th Cir. 1978).

■ We consider three factors in determining whether there has been an abuse of discretion:

[D]eference to the trial judge, who has had the opportunity to observe the witnesses and to consider the evidence in the context of a living trial rather than upon a cold record, deference to the jury's determination of weight of the evidence and quantum of damages, and the constitutional allocation to juries of questions of fact.

*Massey v. Gulf Oil Corp.*, 508 F.2d 92 at 94–95 (5th Cir.), *cert. denied* 423 U.S. 838, 96 S.Ct. 67, 46 L.Ed.2d 57 (1975), *citing Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033 (5th Cir. 1970).

Applying these factors to the case at hand we find no abuse of discretion in the order granting a new trial on some of the same issues that had been submitted to the jury. While the trial judge did not discuss his reasons for granting the new trial, the government demonstrated that the special verdict was not supported by the evidence and was against the clear weight of the evidence. For instance, the verdict included cost allowances not permitted by law on items such as Horton's general and administrative expenses, for which the government's uncontradicted evidence showed Horton claimed costs incurred before she entered the Medicare program. The verdict demonstrated that the jury failed to follow the trial judge's instructions, particularly on the matter of the burden of proof, since the verdict allowed Horton costs, such as bad debts, for which she had presented no evidence as to her entitlement under the Medicare regulations. The jury had difficulty in applying the regulations along with principles of accounting, as shown by the jurors' garbled question on the computation of depreciation. The trial judge, in preparing a clarifying answer, noted the jury's confusion. Despite the complexity of the issues, the jury returned its verdict very quickly. The trial judge, who had heard all the evidence and knew the complex regulations, was clearly justified in concluding that a new trial on six of the issues was necessary to avoid injustice.

## II

Horton argues that the law of the case should be applied to preclude the grant of the government's motion for summary judgment, since such motion had been twice denied previously. In her brief, Horton did not argue that a genuine issue of fact exists. Only at oral argument did she argue that a review of the transcript of the first trial would reveal a genuine issue of fact.

We have reviewed the transcript of the first trial and find no genuine issue of fact. Our inquiry, thus, is limited to whether the law of the case should prohibit the grant of the summary judgment.

While the ruling on the motion for partial summary judgment is the law of the case on the issues decided, this ruling is not immutable and has no res judicata effect. *Travelers Indemnity Co. v. Erickson's, Inc.*, 396 F.2d 134 (5th Cir. 1968). The doctrine of law of the case is not inflexible; the earlier ruling, which is not res judicata, may be reconsidered in the interest of judicial economy. It is commonly held "where the order of the court is a mere denial of the motion for summary judgment and the court does not specify what facts are uncontroverted, the order establishes nothing as the facts and all issues made by the pleadings are open at trial." 6 J. MOORE'S FEDERAL PRACTICE § 56.04[1] (1975). Here, the trial judge properly reconsidered the motion for summary judgment, because the production of reports, admissions, affidavits, and other record material during the course of the proceedings had clarified and resolved questions of material fact on several of the line item adjustment issues. We hold that the court correctly perceived and performed its function under the summary judgment procedure, sifting the issues and assessing the proof to determine which issues required a trial and which were ready for judgment, as mandated by Rule 56(c), Fed.R.Civ.P.

## III

The trial judge did not abuse its discretion by appointing, pursuant to Rule 53(b), Fed.R.Civ.P., a special master to make findings and recommendations to assist the jury on its verdict on the complex line item issues. Although there is no precedent for the utilization of a special master in a Medicare provider reimbursement case, such utilization was appropriate, since the legal issues here were too complex for the jury of laymen to resolve without assistance. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962);

*Boyd Callan, Inc. v. United States,* 328 F.2d 505 (5th Cir. 1964); *In re Watkins,* 271 F.2d 771 (5th Cir. 1959). Further, the trial judge had been through one trial when he decided that a special master should be appointed. Such experience is a further indication that the trial judge did not abuse his discretion.

### IV

■ The trial judge did not abuse its discretion in reconsidering and altering its earlier ruling on the matter of prejudgment interest. The doctrine of the law of the case, upon which appellant relies, does not deprive the trial judge of the power to reexamine and, if necessary, to alter a previous ruling in order to avoid the perpetuation of an error. *United States v. United States Smelting Refining and Mining Co.,* 339 U.S. 186, 70 S.Ct. 537, 94 L.Ed. 750 (1950); *Messenger v. Anderson,* 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152 (1912).

Accordingly, because the trial judge did not abuse its discretion in granting a new trial, correctly entered the four partial summary judgments, correctly appointed a special master, and was otherwise correct in its rulings, we affirm.

AFFIRMED.