**Frank E. WILHELM, Karl F. Gatlin and Harold L. Kogut, Appellees,**

v.

**BLUE BELL, INC., Appellant.**

**No. 84-1854.**

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1985.

Decided Sept. 18, 1985.

W.T. Cranfill, Jr., Charlotte, N.C. (John O. Pollard; Blakeney, Alexander & Machin, Charlotte, N.C., on brief), for appellant.

Samuel M. Millette; Ernest S. DeLaney, III, Charlotte, N.C., (DeLaney, Millette & McKnight, P.A., Charlotte, N.C., on brief), for appellees.

Before PHILLIPS, CHAPMAN and WILKINSON, Circuit Judges.

CHAPMAN, Circuit Judge:

Plaintiffs Frank Wilhelm, Karl Gatlin, and Harold Kogut brought this age discrimination suit against their former employer, Blue Bell, Inc., under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* Plaintiffs Wilhelm and Gatlin alleged that Blue Bell had discharged them because of their ages and that their respective discharges were without just cause and in violation of an implied covenant of good faith and fair dealing. Plaintiff Kogut later intervened and alleged that Blue Bell had discharged him because of his age. The plaintiffs' state law claims were dismissed prior to trial.

The jury found that Blue Bell had discharged plaintiffs Wilhelm and Kogut because of their ages in violation of the ADEA, awarded them damages, and concluded that Blue Bell's discrimination was "willful" within the meaning of § 7(b) of the ADEA, 29 U.S.C. § 626(b). The jury

also found that plaintiff Gatlin had not filed his age claim with the Equal Employment Opportunity Commission within the applicable time period and accordingly awarded him no damages. In conformity with the jury's verdict the district court awarded Wilhelm and Kogut back pay, liquidated damages equal to the back pay amounts, reinstatement, attorneys' fees and costs. These orders were stayed pending appeal.

Blue Bell appeals claiming that the district court erred in denying its motions for judgment notwithstanding the verdict or a new trial and in instructing the jury on the issue of willfulness. We affirm the district court's denial of Blue Bell's motion for judgment notwithstanding the verdict but remand the case for a new trial on the issue of damages under a proper willfulness instruction.

I

Blue Bell manufactures and markets outer wearing apparel. Its most common product lines are blue jeans and related sportswear bearing the "Wrangler" brand name. Plaintiffs Wilhelm and Kogut were both Field Sales Representatives in the Southeastern Region of Blue Bell's Wrangler Boyswear Division. Wilhelm was responsible for the western half of North Carolina [1] and Kogut was responsible for the southern half of Florida.

Wilhelm was fired on February 2, 1982. Wilhelm was forty-nine years old and had been employed by Blue Bell for eight and one-half years when he was fired. At trial Blue Bell claimed that it fired Wilhelm because he refused to make "line presentations" as instructed by his supervisor, William Wise, and because he essentially ceased working in January 1982 after finishing a one year probationary period. Specifically, the evidence reveals that Wilhelm had worked only thirty accounts since January 1, the lowest of any salesman in the region. Blue Bell also notes that Wil-

helm's relative salesman efficiency was the lowest in the region and his total number of accounts developed was the lowest in the region. In addition, Wilhelm's own contact reports indicate that he had made only one line presentation the first week in January, only two the second week, and only four the third week instead of the twenty per week required. As a result, Wilhelm had the lowest bookings in the region.

Wilhelm presents an entirely different picture of his performance. According to Wilhelm, as of January 29, 1982, he had secured four new accounts, was twenty-four percent ahead of his prior year's sales, was number one in the Southeastern Region in sales, and was number eleven out of eighty-five sales persons in the nation. Furthermore, Wilhelm notes that these figures do not even take into account sales for the last week in January. Wilhelm states that had he received credit for all of the sales he made, his actual percentage ahead of sales for the year before would have been thirty-four percent and his position nationally would have been number nine out of eighty-five.

Kogut was fired on May 16, 1983. Kogut was fifty-two years old and had been employed by Blue Bell for twelve years when he was fired. At trial, Blue Bell claimed that it fired Kogut and an under forty salesman named Randy Cloud because they both failed, after specific counseling and warning, to fulfill the evaluation criteria imposed on all the Boyswear salesmen in the Southeastern Region as part of an intensive eight-week period of evaluation. Blue Bell replaced Kogut with a twenty-eight year old salesman.

Kogut also presents a different picture of his performance. According to Kogut, at the time he was fired he was number one in the six-man district in accomplishing percent of sales quota and was number two in the entire Southeastern Region in acquiring new accounts. Kogut's immediate supervisor during the evaluation period,

1. Prior to mid–1981 Wilhelm was responsible for forty-one counties in North Carolina that ran from the Tennessee border to Wilmington.

District Manager Joe C. Glover, testified that as of May 19, 1983, Kogut was at seventy-eight percent of quota with approximately four and one half months left in the fiscal year. In addition, Kogut notes that Blue Bell fired him approximately one month after he gave deposition testimony unfavorable to Blue Bell as part of the discovery proceedings in the Gatlin and Wilhelm lawsuit.

## II

To establish discrimination in an age discrimination case, the plaintiff must prove by a preponderance of the evidence that "but for" the defendant's motive to discriminate against an older employee, he would not have been terminated. *E.E.O.C. v. Western Electric Co., Inc.,* 713 F.2d 1011, 1014 (4th Cir.1983); *Lovelace v. Sherwin-Williams Co.,* 681 F.2d 230, 239 (4th Cir.1982); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1019 (1st Cir.1979). The plaintiff may meet this burden "under ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue...." *Lovelace,* 681 F.2d at 239. Alternatively, the plaintiff may rely on the judicially created proof scheme for Title VII cases, *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), which has been adopted for application in ADEA litigation. *See E.E.O.C. v. Western Electric Co., Inc.,* 713 F.2d at 1014; *Fink v. Western Electric Co., Inc.,* 708 F.2d 909 (4th Cir.1983); *Smith v. University of North Carolina,* 632 F.2d 316 (4th Cir.1980).

In this case it is undisputed that plaintiffs Wilhelm and Kogut were in the protected age bracket when Blue Bell fired them. Accordingly, the sole issue for trial was whether age was a determining factor in the discharge of each plaintiff. In *Lovelace* this court established that the dispositive motivational issue of whether the plaintiff was discharged because of his age

can be proven without resort to the *McDonnell Douglas* format:

> Where—as here, and ordinarily—coverage and unfavorable action are not disputed, the dispositive and only issue is a difficult, but narrow, motivational one: whether the employee "was [discharged] because of his age." This may of course be proved under ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue, ... *without resort to any special judicially created presumption or inferences related to the evidence.*

681 F.2d at 239 (emphasis added) (quoting *Loeb,* 600 F.2d at 1017).

In *Lovelace* this court held that direct evidence of age discrimination is sufficient to overcome a motion for a directed verdict or judgment notwithstanding the verdict. There, this court stated that in ruling upon a sufficiency motion in an ADEA case:

> The first question is whether plaintiff's evidence may have carried the original production burden without need to invoke the *McDonnell-Douglas* presumption. This may have occurred, for example, through direct evidence of a stated purpose to disfavor because of age.... If this is the judicial assessment, inquiry of course ceases, no further production burdens are put in play, and the motion can be denied.

681 F.2d at 240 (emphasis added) (citation omitted). Furthermore, in *Spagnuolo v. Whirlpool Corp.,* 641 F.2d 1109 (4th Cir. 1981), this court ruled that where the plaintiff in an ADEA case relies primarily upon direct evidence of a discriminatory motive by the employer, the case " 'simply does not fit the mold of the *McDonnell Douglas* formula,' " and the plaintiff has no need to prove independently that the defendant's articulated reasons for a discharge were "pretextual." *Id.* at 1113 & n. 2 (quoting *Loeb,* 600 F.2d at 1018).

In considering the motion for judgment notwithstanding the verdict, the district court was required to view the evidence in the light most favorable to Wilhelm and

Kogut and to draw all reasonable inferences in their favor. The district court could not weigh evidence or assess the credibility of witnesses. 9 Wright & Miller, *Federal Practice & Procedure* § 2524 at 543–45 (1971). The test for determining whether judgment notwithstanding the verdict should be entered is whether, viewing the evidence in the light most favorable to the appellee-plaintiff, there is substantial evidence in the record to support the jury's findings. *Brady v. Allstate Insurance Co.*, 683 F.2d 86, 89 (4th Cir.1982), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 605 (1982); *Miller's Mutual Insurance Association v. Southern Ry. Corp.*, 483 F.2d 1044 (4th Cir.1973).

■ Unlike the motion for judgment notwithstanding the verdict, the district court may weigh evidence and assess credibility in ruling on a motion for a new trial. *See Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 891–92 (4th Cir.1980). Indeed, the district court had a duty to order a new trial if "this action [was] required in order to prevent injustice." 11 Wright & Miller, *Federal Practice & Procedure* § 2805 at 38 (1973). However, the grant or denial of a motion for a new trial is within the sound discretion of the district court and will not be disturbed absent a clear showing of abuse of discretion. *See Abasiekong v. City of Shelby*, 744 F.2d 1055, 1059 (4th Cir.1984); *United States v. Horton*, 622 F.2d 144, 147 (5th Cir.1980).

### III

### A

■ The first issue on appeal is whether the district court erred in denying Blue Bell's motions for judgment notwithstanding the verdict or a new trial. Blue Bell argues that the plaintiffs have failed to establish a prima facie case of age discrimination because the record conclusively shows that neither Wilhelm nor Kogut was subjected to any disparate treatment because of his age. Blue Bell emphasizes that between 1977 and 1983 only two over-forty Boyswear salesmen in the Southeastern Region (plaintiffs Wilhelm and Kogut) were discharged. During the same period, however, four other under-forty salesmen were also discharged. Furthermore, Blue Bell maintains that it fired both Wilhelm and Kogut because they failed adequately to discharge their duties as measured by objective criteria. Blue Bell also argues that there is no substantial evidence to support the jury's findings that both Wilhelm and Kogut had successfully rebutted Blue Bell's legitimate, nondiscriminatory reasons for its employment decisions.

The plaintiffs introduced ample direct evidence suggesting that Blue Bell fired them because of their ages. This direct evidence of age discrimination consisted of testimony relating how various Blue Bell officials had indicated an intent to replace older salesmen with younger salesmen. For example, plaintiffs introduced evidence of a conversation between Wilhelm and his immediate supervisor, William Wise, in February 1981, less than one year before Wilhelm's discharge, relating to various personnel changes in the company. Wilhelm testified that Wise told him that "eventually Blue Bell is going to have $15,000 a year college boys for salesmen.... Blue Bell cannot stand these five and six percent commission rates; so, in time they will have all young college guys on a salary, being paid expenses and going around taking inventory in Blue Bell accounts." App. at 406.

The plaintiffs also introduced evidence of a conversation between Wilhelm and Wise in September 1981 when Wise placed Wilhelm on probation. At that time Wilhelm protested that his performance was better than the other salesmen in the Region and accused Blue Bell of being "on a youth campaign" and wanting "to get rid of the older guys and replace them with younger people." App. at 423. Instead of denying that accusation, Wise confirmed that he believed that "older people tend to become complacent whereas younger people generally have more drive and ambition." *Id.* Wilhelm testified that Wise told him that "He was going to take care of him first

and then there were going to be some others." *Id.*

Kogut testified that in September or October 1981 Wise conceded that he believed that "younger salesmen do a much better job than older salesmen." App. at 580. According to Kogut, Wise further stated that "in the not too distant future, all Wrangler salesmen would be young, college boys driving leased Chevrolets, taking inventory on big Wrangler accounts." *Id.* Kogut testified to these statements by Wise while he was a Blue Bell employee and prior to becoming a plaintiff in this case.

Wilhelm and Kogut testified that they informed Jerry Poole, the president of the Boyswear Division of Blue Bell, about the statements made by Wise that younger salesmen do a much better job than older salesmen and that the future Blue Bell salesman would be a young college boy. According to Wilhelm and Kogut, in each instance Poole responded, "That really doesn't bother me too much." App. at 440, 776. At trial Poole admitted that Wilhelm and Kogut had informed him of Wise's age-related remarks prior to their termination and that he had, in fact, responded to each that the statements did not bother him. App. at 776. Poole explained that these threats to terminate older salesmen and replace them with "college boys" did not bother him because he was not "going to let it happen." *Id.* Furthermore, the uncontradicted evidence at trial established that when Poole was first informed that Wise had placed Wilhelm on probation in September 1981, five months prior to his firing, Poole responded, "you have to understand that Bill Wise is of the opinion that the younger salesmen do a much better job than you older fellows. You older fellows have a tendency to become complacent after you have been around a while and run out of steam." App. at 579.

Wise ceased to be Kogut's manager and was replaced by Joe Glover. The plaintiffs offered evidence that in December 1981 Glover told Kogut, Wilhelm and another Blue Bell salesmen that "Blue Bell doesn't want salesmen with good records anymore. . . . They want young men who can do the work for a lot less money." App. at 445–46, 597–98. The plaintiffs further offered evidence that in December 1981, one month prior to Wilhelm's firing, the National Sales Manager of Blue Bell, Ed Weymeth, approached Wilhelm, Kogut, and one other older salesman and said, "My God, [are] you old guys still around. I thought we got rid of you at the last sales meeting." App. at 596, 445.

We conclude that there is substantial evidence in the record to support the jury's findings that Blue Bell discharged Wilhelm and Kogut because of their ages. The plaintiffs introduced ample direct evidence of age discrimination from which the jury could have concluded that Blue Bell fired Wilhelm and Kogut because of their ages. This direct evidence of age discrimination, if believed by the jury, was sufficient by itself to support a verdict for the plaintiffs and, concomitantly, to survive a motion for a directed verdict or a judgment notwithstanding the verdict. *Lovelace v. Sherwin-Williams Co.*, 681 F.2d at 240. In addition, this direct evidence of age discrimination obviated the need for an independent showing by plaintiffs that Blue Bell's articulated reasons for their discharges were "pretextual." *Spagnuolo v. Whirlpool Corp.*, 641 F.2d at 1113. Thus, the district court did not err in denying Blue Bell's motion for judgment notwithstanding the verdict. For the same reasons, the district court did not abuse its discretion in denying Blue Bell's motion for a new trial.

### B

▋ The second issue is whether the district court erred in instructing the jury on the issue of willfulness. Section 7(b) of the ADEA, 29 U.S.C. § 626(b), provides that a prevailing plaintiff is entitled to double damages in the case of a "willful" violation of the ADEA. In this case the district court awarded the plaintiff's liquidated damages "based upon the jury verdict, and all the evidence before the court" and be-

cause the "discriminatory actions of defendant towards [Wilhelm and Kogut] were willful and not effected in good faith."

Despite its failure to object at trial, Blue Bell argues that the district court erred in instructing the jury on the issue of wilfulness. It claims that the instruction was inconsistent with the Supreme Court's recent decision in *TransWorld Airways, Inc. v. Thurston,* — U.S. —, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), decided during the pendency of this appeal. We analyze the instruction in light of *TransWorld. See United States v. The Schooner Peggy,* 5 U.S. (1 Cranch) 102, 2 L.Ed. 49 (1801); *Bradley v. School Board of the City of Richmond,* 416 U.S. 696, 711–21, 94 S.Ct. 2006, 2016–21, 40 L.Ed.2d 476 (1974).

In *TransWorld* the Supreme Court approved the Second Circuit's definition that a violation is willful if " 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.' " 105 S.Ct. at 625 (quoting the Second Circuit below, 713 F.2d 940, 956 (2d Cir.1983)). This holding prevents an award of liquidated damages when a diligent employer, fully aware of the ADEA and pursuing a mistaken path to comply with it, acts reasonably and in good faith. 105 S.Ct. at 625 n. 22; 626. The Supreme Court expressly rejected the argument that a violation of the ADEA is willful if the employer simply knew of the potential applicability of the Act:

> Even if the "in the picture" standard were appropriate for the statute of limitations, the same standard should not govern a provision dealing with liquidated damages. More importantly, the broad standard proposed by the respondents would result in an award of double damages in almost every case. As employers are required to post ADEA notices, it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability. Both the legislative history and the structure of the statute show that Congress intended a two-tiered liability scheme.

*Id.* at 625 (footnote omitted).

In this case the district court initially instructed the jury as follows:

> If you find that the discharge of one of the plaintiffs was knowingly and intentionally done, with the knowledge that the transaction was subject to the Age Discrimination Act and that ... it was intentionally done knowing what the consequences would be and that conduct was in violation of the law to the knowledge of the actor, then you would answer that issue yes. Otherwise, you would answer it no.

After its initial instructions, the district court gave counsel for both sides an opportunity outside the presence of the jury to object to the instructions or to purpose additional instructions. Plaintiffs' counsel objected to the court's instruction that Blue Bell must have intentionally violated the law in order for its conduct to have been willful and proposed an additional instruction on that issue. The district court then gave an additional two sentence instruction on the issue of willfulness:

> Conduct is willful when it is done intentionally, knowingly, with the intention to accomplish the result of firing *and with awareness on the part of the actor that the conduct is covered by the Age Law.* It doesn't quite go so far as to require that there be proof of an intentional act to violate the law but there does have to be a consciousness of the application of the law in order for it to be willful. (emphasis added).

The district court's second willfulness instruction is similar to the "in the picture" standard rejected in *TransWorld.* As the Supreme Court noted in *TransWorld,* this type of standard would result in an award of double damages in nearly every case. Thus, we reverse the district court's award of liquidated damages and remand the case for a new trial on the issue of damages under a willfulness instruction consistent with the Supreme Court's decision in *TransWorld.*

## C

The third issue concerns various evidentiary rulings. Blue Bell contends the district court committed four separate evidentiary errors in (1) refusing to allow counsel for Blue Bell to cross-examine Kogut about whether there was a territory that encompassed the northern half of Florida, the southern part of Georgia, and part of South Carolina including Charleston; (2) refusing to allow Blue Bell to introduce into evidence during the testimony of Joe Glover part of a chart which contained summaries of information from other Blue Bell records concerning the performance of salesmen in both the northern and southern districts; (3) admitting into evidence a letter written by William Holt, the president of Blue Bell's Maverick Division, to all retail distributors of Blue Bell's products; and (4) refusing to allow Blue Bell to introduce testimony and exhibits concerning the sales performance of Wilhelm's twenty-four year old replacement, Wayne Knighton.

The admission or exclusion of evidence rests within the sound discretion of the district court and cannot be reversed absent abuse of that discretion. *DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 518 (4th Cir.1985); *Reed v. Tiffin Motor Homes, Inc.*, 697 F.2d 1192 (4th Cir. 1982). After carefully reviewing the record we are unable to conclude that the district court abused its discretion in this case.

## IV

In summary, we affirm the district court's denial of Blue Bell's motion for judgment notwithstanding the verdict but remand the case for a new trial on the issue of damages under a proper willfulness instruction. On remand, the district court should instruct the jury on willfulness in conformity with the Supreme Court's recent decision in *TransWorld Airways, Inc. v. Thurston*, —— U.S. ——, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

REMANDED.