850 F.2d 689
 11 Fed.R.Serv.3d 725
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Robert B. GOLDSTEIN, Plaintiff-Appellant,
v.
NATIONAL RAILROAD PASSENGER CORPORATION, t/a Amtrak,
Defendant-Appellee,
and
R.J. Corman Railroad Construction, Third Party Defendant.
 No. 87-1719.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 6, 1988.
Decided: June 15, 1988.
 
 Irving Schwartzman (Roger Greezicki, Savage & Schwartzman, on brief), for appellant.
 Jonathan E. Claiborne (Whiteford, Taylor & Preston, on brief), for appellee.
 D.Md.
 AFFIRMED.
 Before CHAPMAN and WILKINSON, Circuit Judges, and EUGENE A. GORDON, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellant Robert Goldstein sued his employer, appellee National Railroad Passenger Corporation ("Amtrak"), under the Federal Employers' Liability Act ("FELA"). 45 U.S.C. Secs. 51-60 (1986). Goldstein alleged that he sustained physical injury as a result of Amtrak's negligence. At trial, a jury determined that Amtrak was not negligent. The district court entered judgment in favor of Amtrak and refused to grant Goldstein's motion for a new trial. Finding that the evidence supports the jury's verdict and that the trial judge properly instructed the jury with respect to Amtrak's duty of care under the FELA, we affirm the judgment of the district court.
 
 I.
 
 2
 Amtrak employed Goldstein as a repair foreman. As foreman, Goldstein was responsible for repairing the equipment Amtrak used to repair and maintain railroad tracks. On June 6, 1984, the cutting bar of an undercutting machine wedged underneath an expanse of railroad track. Amtrak's general foreman instructed Goldstein to attempt to release this cutting bar from underneath the track.
 
 
 3
 Goldstein and the crew of the undercutting machine first attempted to pry the cutting bar loose. This attempt proved unsuccessful. Someone then suggested that Goldstein disassemble the bar. After hearing this suggestion, Goldstein turned his back to the undercutting machine and started walking to retrieve the tools necessary to disassemble the bar. After taking two or three steps, Goldstein heard the engine of the undercutting machine start. The machine lurched, and the boom of the machine struck Goldstein on the head.
 
 II.
 
 4
 On appeal, Goldstein first argues that the jury's verdict is against the weight of the evidence. The court disagrees. The facts recited above completely summarize the evidence about the cause of the accident. This evidence does not compel the conclusion that Amtrak's negligence caused the accident to occur. If anything, this evidence fails to demonstrate that Amtrak was negligent. Goldstein presented no evidence concerning how or why the accident occurred; nor did Goldstein request a jury instruction on res ipsa loquitur.
 
 
 5
 Goldstein nonetheless urges that the jury's verdict is against the weight of the evidence. Goldstein notes that, at trial, the court denied defendant's directed verdict motion. This denial, Goldstein argues, conclusively demonstrates that plaintiff presented a prima facie case of liability. Thereafter, defendant presented evidence but did not present any evidence controverting plaintiff's factual account of the accident. Accordingly, Goldstein argues that the uncontroverted prima facie case compelled the jury to find for the plaintiff.
 
 
 6
 Goldstein's argument misconstrues the effect of a trial court's denial of a directed verdict motion. A trial court's denial of a defendant's directed verdict motion does not mean that the plaintiff has established a prima facie case of liability. Fed.R.Civ.P. 50(b) allows a court to reserve ruling on a directed verdict motion until after the jury reaches a verdict, and many trial courts routinely defer ruling on or deny directed verdict motions:
 
 
 7
 In most circumstances the court wisely will reserve decision on the motion for directed verdict, submit the case to the jury, and then pass on the legal sufficiency of the evidence in a motion for judgment notwithstanding verdict. This course avoids the need for a second trial if an appellate court should hold, contrary to the view of the trial court, that the evidence was sufficient to raise a jury issue.
 
 
 8
 C.A. Wright, The Law of Federal Courts Sec. 94 (1983). Accord, Colonial Lincoln-Mercury, Inc. v. Musgrave, 749 F.2d 1092, 1098 n. 3 (4th Cir.1984) ("trial judges are formally encouraged for cogent reasons of judicial economy ordinarily to submit all but the plainest cases for jury verdict subject to the reserved ruling [on the directed verdict motion]" ) (citing 9 C. Wright and A. Miller, Federal Practice & Procedure: Civil Sec. 2533 (1971)).
 
 
 9
 The trial judge's decision not to direct a verdict is especially understandable in a FELA case. Many cases indicate that a mere scintilla of evidence is sufficient to make a jury issue in cases arising under the FELA. Id. at Sec. 2526.
 
 III.
 
 10
 Goldstein also argues that it was an abuse of discretion for the trial judge to refuse to grant a new trial. Goldstein again asserts, in support of this argument, that the jury verdict is against the weight of the evidence.
 
 
 11
 The decision to grant or deny a motion for new trial, under Fed.R.Civ.P. 59(a), is within the sound discretion of the trial court. The district court may weigh evidence and assess credibility in ruling on a motion for a new trial. Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 891-92 (4th Cir.1980). An appellate court will not reverse a trial court's decision to grant or deny a new trial absent clear evidence that the trial court abused its discretion. Wilhelm v. Blue Bell, Inc., 773 F.2d 1429, 1433 (4th Cir.1985), cert. denied, 475 U.S. 1016 (1986).
 
 
 12
 There is no evidence in the present case that the trial court abused its discretion. The trial court found that:
 
 
 13
 [P]laintiff did not show that defendant failed to exercise ordinary care in providing plaintiff a safe work place. Moreover, plaintiff did not show any causal connection between defendant's conduct and his injury. Given what was proved at trial, the jury's verdict agrees with the weight of the evidence.
 
 
 14
 As discussed above, the jury's verdict appears consistent with the evidence, and the trial court did not abuse its discretion in determining that a second trial on the issue of negligence was unwarranted.
 
 IV.
 
 15
 Goldstein's final ground for appeal is that the trial court incorrectly instructed the jury on an employer's liability under the FELA. Goldstein requested that the trial court submit the following instruction to the jury:
 
 
 16
 The Jury is instructed that, under the Federal Employers' Liability Act, liability is imposed upon the employer to pay damages for injury due in whole or in part to the employer's negligence. Under this Statute, the employer is liable if the evidence justifies, with reason, the conclusion that its negligence played any part, EVEN THE SLIGHTEST, in producing the injury for which damages are sought. A corporation can act only through its officers, or employees, or other agents, so any negligent act or omission of an officer, or employee, or other agent of a corporation, in the performance of his duties, is held in law to be the negligence of the corporation. In other words, the employer is liable if the negligence of any of its officers, agents or employees played any part at all in the injury (emphasis supplied).
 
 
 17
 The court omitted the phrase "even the slightest" from its charge to the jury. Otherwise, the court gave the requested instruction verbatim. Goldstein's only objection to the jury charge is the trial court's decision to omit the language "even the slightest."
 
 
 18
 As long as a jury instruction fairly states and adequately covers the relevant law, a party cannot prevail on appeal merely because the court did not give the instruction in the precise language requested by the party. "A party has no vested interest in any particular form of instructions; even though his proffered prayer is unobjectionable in itself, the language of the instructions is for the trial court to determine." City of Richmond v. Atlantic Co., 273 F.2d 902, 915 (4th Cir.1960) (quoting 5 Moore, Moore's Federal Practice Sec. 51.06 (2d ed. 1951).
 
 
 19
 Goldstein argues that the omission of the "even the slightest" language altered the burden of proof in this case. The court disagrees. The trial court began the jury charge by reading the relevant parts of the statute to the jury. The statute makes a common carrier liable for injuries "resulting in whole or in part" from the negligence of the carrier. The court then gave the instruction to which Goldstein objects. As illustrated above, this instruction clearly informed the jury that Amtrak would be liable if its negligence played "any part at all in the injury." This language presented a clear and correct statement of the law to the jury.
 
 V.
 
 20
 The evidence supports the jury's verdict, and the trial court correctly charged the jury on the relevant law. Accordingly, the judgment of the district court is
 
 
 21
 AFFIRMED.