**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SHANEIKA HOBBS, By and through
her parent and guardian, Jacqueline
Hughes; JACQUELINE CAMPER,
<u>Plaintiffs-Appellants,</u>

v.

TOWN OF HURLOCK; WENDELL C.
TRAVERS, individually, and in his

official capacity as Hurlock Police
Chief; DONALD BRADLEY, in his
capacity as Mayor of the Town of
Hurlock; JAMES C. CAMPER,
individually and in his official
capacity as Hurlock Police
Sergeant; JAMES A. CAMPER,
<u>Defendants-Appellees.</u>

No. 97-2152

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Harvey II, Senior District Judge.
(CA-94-2610-H, CA-95-3688-H)

Submitted: November 30, 1998

Decided: January 11, 1999

Before MURNAGHAN and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Elliott Denbo Andalman, Daniel A. Katz, SILBER, ANDALMAN, PERLMAN & FLYNN, P.A., Takoma Park, Maryland; Deborah A. Jeon, AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF MARYLAND, Centreville, Maryland, for Appellants. Daniel Karp, Denise Ramsburg Stanley, ALLEN, JOHNSON, ALEXANDER & KARP, Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Shaneika Hobbs appeals from the district court's final order entering judgment in favor of the Defendants on her 42 U.S.C.A. § 1983 (West Supp. 1998) complaint. For the reasons that follow, we affirm.

Hobbs, a minor, filed suit in 1994 against the Town of Hurlock, Maryland, its Police Chief (Wendell Travers), and its Mayor (Donald Bradley), in which she claimed that she was arrested and strip-searched in violation of her constitutional rights, and claimed false imprisonment under state law.* In a 29-page memorandum opinion entered on November 27, 1995, the district court granted summary judgment in favor of all defendants on all counts except as to Hobbs' claim against Travers in his individual capacity asserted in Count I of

_____

*In Count I, Hobbs alleged that she was arrested without probable cause and was subjected to an unreasonable search and seizure in violation of her rights under the Fourth and Fourteenth Amendments; Count II claimed a violation of the Equal Protection Clause by arresting, detaining, and strip searching her on the basis of her gender; Count III claimed that she was arrested, detained, and strip searched on account of her race; Count IV claimed false imprisonment under state law.

2

the complaint (Supervisor Liability). Travers appealed to this court which affirmed the judgment of the district court, finding that "because there was a dispute of facts concerning the conduct and reasonableness of the search of Hobbs rendering summary judgment inappropriate, we affirm." See Hobbs v. Travers, No. 95-3207, 1996 WL 680727 (4th Cir. Nov. 26, 1996) (unpublished).

Meanwhile, in December 1995, Hobbs filed a second complaint, based on the same facts, naming Sergeant Camper as the only defendant (Hobbs II). In Count I, Hobbs sought recovery from Camper under § 1983 for the allegedly illegal arrest and strip search. In Count II, Hobbs asserted a claim for false imprisonment under Maryland common law. Hobbs and Camper filed motions for summary judgment.

Based on additional evidence before the court (exhibits and deposition testimony of experts which were not before the court in Hobbs I), and because Camper was not a party in Hobbs I, the district court "re-examine[d] on the basis of the expanded record here its previous determination that as a matter of law Camper did not have probable cause to arrest . . . Hobbs on March 15, 1994." The court concluded that neither Hobbs nor Camper was entitled to summary judgment on the probable cause issue. Further, the court denied Camper's motion for summary judgment on his claim of qualified immunity because "[w]hether or not Camper's decision to arrest plaintiff Hobbs was objectively reasonable raises questions of disputed fact which cannot be finally determined by way of a motion for summary judgment." All other findings made in the district court's first order were re-affirmed. Specifically, the court found that Hobbs was not arrested and detained on account of either her race or gender and, therefore, all of the Defendants were entitled to summary judgment on Counts II and III of the complaint. The cases were consolidated for trial by jury on Hobbs' Fourth Amendment claims against Camper and Travers in their individual capacities only.

At trial, the following evidence was introduced. On the evening of March 15, 1994, Travers had just gone off-duty and was on his way home when he noticed a red car parked at the corner of Main and Poplar Streets. Travers testified that he noticed several individuals cross the street, approach the passenger side of the vehicle, and then

3

quickly return to the other side of the street. Earlier in the day, Travers had been informed by a member of the Narcotics Task Force of the Maryland State Police that Derrick Wongus was under surveillance for suspected drug dealing and that "if I saw Derrick Wongus in the red Oldsmobile at that location, or anywhere in the town of Hurlock, there was a probability that drugs were being dealt out of his car." Travers then called Officer Camper to "make a check."

Camper testified that, when he arrived at the scene, he immediately recognized Wongus in the driver's seat. Hobbs was seated in the front passenger seat. Another police officer, Officer Miller, arrived shortly after Camper and asked Wongus for permission to search his vehicle and Wongus agreed. Camper asked Hobbs to exit the vehicle and stand near his police car while the search was conducted.

The search uncovered .2 grams of cocaine in a glass vial on the floor of the driver's side and a .45 caliber magazine. Wongus was arrested and a search incident to his arrest revealed a bag of marijuana and $899 in cash in his pocket. Camper then asked Hobbs to get into the police car. The only information she gave him was that she was fifteen years old. Camper informed Travers and Hobbs that he was going to take her to headquarters to call her parents. Camper testified that his purpose in taking her to the station was, because there were drugs found in the car, "I had to either charge her with a charge or release her in the custody of her parents, and at the present time the arrest was just to get her to headquarters to, you know, find out what involvement she had in drugs, if any, and to do a pat down on her to make sure that she had no drugs on her." Although all the males present at the scene were frisked and released, Camper stated that he did not frisk Hobbs because there were no female officers present and "I did not want to be accused of touching any kind of way that they could say that something was wrong with what I did." Wongus was handcuffed and taken to the station by Officer Pritchard where he was strip-searched.

Once she and Camper arrived at the police station, Hobbs was allowed to call her mother. When Hobbs informed Camper that she needed to go to the bathroom, he told her that she would have to be strip searched before she could use the bathroom. A female officer conducted a full-body visual search and observed Hobbs use the rest-

4

room. No drugs were found and Hobbs was released to the custody of her mother--no charges were brought against her.

At the close of the evidence, the parties each moved for judgment as a matter of law, which the district court denied. The jury found for both Defendants. This appeal followed.

Hobbs claims that the district court erred by (1) denying her motion for judgment as a matter of law on her claims of illegal search and seizure; (2) failing to reject, as a matter of law, Camper's claim of qualified immunity; and (3) summarily dismissing her discrimination and municipal liability claims.

a. Denial of motion for judgment as a matter of law. This court reviews the denial of a motion for judgment as a matter of law (JAML) de novo, examining the evidence in the light most favorable to Camper and Travers, the non-moving parties. See Brown v. CSX Transp., Inc., 18 F.3d 245, 248 (4th Cir. 1994). A motion for JAML should be granted with respect to an issue if "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the nonmoving] party on that issue." Fed. R. Civ. P. 50(a). Accordingly, this court must determine whether "there is substantial evidence in the record to support the jury's findings." Wilhelm v. Blue Bell, Inc., 773 F.2d 1429, 1433 (4th Cir. 1985). When determining whether substantial evidence exists supporting the jury's verdict, this court:

> [M]ay not weigh the evidence, pass on the credibility of the witnesses, or substitute our judgment of the facts for that of the jury. That deference to the jury's findings is not, however, absolute: A mere scintilla of evidence is insufficient to sustain the verdict, and the inferences a jury draws to establish causation must be reasonably probable.

Charleston Area Med. Ctr., Inc. v. Blue Cross & Blue Shield, 6 F.3d 243, 248 (4th Cir. 1993) (quotations and citations omitted).

Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which they had reasonably trustworthy information, are "sufficient to warrant a prudent man in

5

believing that the [individual] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Manbeck, 744 F.2d 360, 376 (4th Cir. 1984). Here, the facts known to Camper at the time of Hobbs' arrest were sufficient to support the jury's finding that probable cause existed. Given her proximity to the drugs that were found in the car and the appearance that drug dealing was being conducted from her side of the car, Camper had reasonable grounds to suspect that Hobbs was involved in illegal drug activity. Accordingly, the district court did not err in submitting this issue to the jury.

There was also sufficient evidence to support the jury's finding with respect to Hobbs' challenge to the strip search. Strip searches of detainees are constitutionally constrained by due process require- ments of reasonableness under the circumstances. See Bell v. Wolfish, 441 U.S. 520, 558-59 (1979). In each case, the need for the particular search must be balanced against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for ini- tiating it, and the place in which it is conducted. Id. at 559. Here, a visual body cavity search for drugs and bathroom surveillance, con- ducted by an officer of the same gender, in private, was reasonable given that Camper had grounds to believe that Hobbs may have been hiding drugs. We find that the evidence was sufficient to support the jury's verdict in favor of the Defendants; therefore, the district court did not err in denying Hobbs' motion for JAML on this claim either. See Justice v. City of Peachtree City, 961 F.2d 188, 193 (11th Cir. 1992).

b. Qualified immunity. Hobbs claims that the district court erred in refusing to find as a matter of law that Camper should be deprived of qualified immunity. Because the qualified immunity of government officials depends at the outset on the existence of a constitutional right, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is `clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." Siegert v. Gilley, 500 U.S. 226, 232 (1991). Because the jury's verdict found that Hobbs' constitutional rights were not violated, Camper was enti-

6

tled to qualified immunity as a matter of law. Therefore, the district court's decision to submit the issue to the jury was not improper.

c. Summary judgment on race and gender discrimination claims. Hobbs alleged that she was unlawfully arrested and strip-searched on account of her gender (Count II) and her race (Count III). The district court granted summary judgment to the Defendants on both claims. The district court concluded that, with respect to Hobbs' gender discrimination claim, it was "entirely reasonable for Officer Camper to decline to pat down [Hobbs] at the scene even though males were searched in this manner. Persuasive justification existed for the different treatment afforded [Hobbs] from that afforded the male persons at the scene." Hobbs failed to provide any evidence that Camper acted toward her with a discriminatory intent or purpose. See Washington v. Davis, 426 U.S. 229, 238-40 (1976); see also Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 819 (4th Cir. 1995) ("A violation [of Equal Protection] is established only if the plaintiff can prove that the state intended to discriminate."). Accordingly, summary judgment was properly entered in favor of the Defendants on this claim.

With respect to Hobbs' racial discrimination claim, the court concluded that, based in part on the fact that Camper was also African-American, "[n]othing in the record suggests that his actions were motivated by racial animus." Again, Hobbs offered no evidence at the summary judgment stage to demonstrate that Camper's action toward her was motivated by an intent to discriminate against her on account of her race. Summary judgment was properly entered in favor of the Defendants on this claim as well.

d. Summary judgment on municipal liability claim. Under Monell v. Department of Social Servs., 436 U.S. 658 (1978), municipalities may not be held liable under § 1983 simply because they employed the tortfeasor acting within the scope of his or her employment. Rather, municipal liability attaches under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694. Furthermore, a plaintiff cannot claim municipal liability unless she can demonstrate that the enforcement of its policy was the "moving force" behind the

7

constitutional violation. <u>See City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823 (1985) (plurality opinion). There can be no award of damages under § 1983, however, against a municipal official or against a corporation based on the actions of one of the municipality's officers when that officer has inflicted no constitutional harm. <u>See City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986). Because Hobbs suffered no constitutional deprivation, summary judgment was properly entered in favor of the Town of Hurlock.

For these reasons, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

8