829 F.2d 1119
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James E. CHUMBLEY; Thomas Lenchek; Michael Corke; Jo
Yount; Adrian De Bee, Plaintiffs-Appellants,
v.
ROCKLAND INDUSTRIES, INC., Defendant-Appellee,
v.
WARM WINDOW, INC., Third-Party Defendant.
James E. CHUMBLEY; Thomas Lenchek; Michael Corke; Jo
Yount; Adrian De Bee, Plaintiffs-Appellants,
v.
ROCKLAND INDUSTRIES, INC., Defendant-Appellee,
v.
WARM WINDOW, INC., Third-party Defendant.
 Nos. 86-3584, 86-3618.
 United States Court of Appeals, Fourth Circuit.
 Argued March 5, 1987.
Decided Sept. 17, 1987.
 
 William David Nussbaum (Steven J. Routh; Hogan & Hartson, on brief), for appellants.
 Donald N. Rothman (Jack C. Tranter; William D. Gruhn; Gordon, Feinblatt, Rothman, Hoffberger & Hollander, on brief) for appellee.
 Before HARRISON L. WINTER, Chief Judge, WILKINSON, Circuit Judge, and FRANK A. KAUFMAN, Senior District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 James Chumbley (Chumbley), one of plaintiffs, developed and patented a thermal insulated window covering system. In February 1980, Chumbley, together with certain minority shareholders (the other plaintiffs), incorporated Warm Window, Inc. (WWI), a Washington corporation, with its principal place of business in Seattle. In 1981, WWI's sales exceeded $497,000. In October 1982, Chumbley, WWI and Rockland Industries, Inc. (Rockland), a Maryland corporation with its principal place of business in Baltimore, entered into an "Exclusive Patent License Agreement"[1] pursuant to which Rockland was authorized to manufacture and sell WWI products, and pursuant to which Rockland agreed that it would "diligently use reasonable efforts to promote the sale" of such products' and pay to Chumbley certain "royalties" and "commissions."[2] Rockland, in 1982, was a nationally established drapery lining manufacturer.
 
 
 2
 In August 1984, Chumbley, as WWI's majority stockholder, joined with WWI's minority stockholders to institute the within suit against Rockland, for breach by Rockland of certain of its undertakings and obligations under the 1982 contract. Specifically, plaintiffs allege (a) breach by Rockland of its duty to exercise diligent, reasonable marketing efforts, (b) failure by Rockland to reimburse Chumbley for expenses incurred by Chumbley in the course of promotional efforts undertaken by Chumbley on behalf of Rockland, and (c) failure of Rockland to pay to Chumbley the correct amount of royalties and commissions. The district court granted relief to Chumbley as to (c) and, at the conclusion of a six-week trial, submitted (a) and (b) to the jury in the form of special questions pursuant to Federal Civil Rule 49(a). The jury's responses to those questions awarded to plaintiffs compensatory damages as to (a) in the amount of $1,000,000.00 and awarded to Chumbley as to (b) compensatory damages in the amount of $7700.00. Rockland's counterclaim against Chumbley for fraud and negligent misrepresentation was also submitted to the jury which, by its answers to the special questions, resolved the counterclaim issues in favor of Chumbley. Subsequently, the district court (1) granted Rockland's post-trial motion for judgment notwithstanding the jury's verdict, (2) entered judgment for plaintiffs in the amount of $1.00, and (3) ordered that if the "granting of the motion for judgment notwithstanding the verdict is reversed on appeal, defendant's motion for a new trial is granted."[3] The district court filed, along with its said post-trial tripartite Order, a Memorandum setting forth the reasons for those actions by it. The Memorandum makes no reference to the $7700.00 item nor to the counterclaim, and appears to relate solely to the $1,000,000.00 jury verdict. Plaintiffs have appealed from the district court's post-trial Order seeking reinstitution of the jury's $1,000.000.00 and $7700.00 verdicts. Defendant has not appealed with regard to the counterclaim. In the context of the entire record before this court, it is clear that plaintiffs are entitled to entry of judgment by the district court as to the counterclaim and also as to the $7700.00 item. The issues, however, relating to the $1,000,000.00 award are considerably more troublesome.
 
 
 3
 While the district judge has not explicitly so stated, his analyses in the Memorandum accompanying the post-trial tripartite Order and the entry by the district court of nominal damages in the amount of $1.00 in place of the $1,000,000.00 jury verdict establish that the district court did not set aside plaintiffs' entitlement, as the result of the jury's answers to the special questions, to judgment as to liability in connection with plaintiffs' claim that Rockland did not diligently and reasonably promote the sale of WWI's products. Rather, the district court concluded that the evidence did not support the jury's award of $1,000,000.00, or indeed support a verdict of more than nominal damages, for Rockland's said failure. Thus, the district court's disagreement with the jury related to whether the jury's award of compensatory damages, in more than the minimal amount of $1.00, could stand. The district court concluded that only an award of minimal compensatory damages was appropriate. For the reasons set forth infra, we cOnclude that the district court's said conclusion constitutes reversible error.
 
 LAW
 
 4
 The district court correctly noted the difference between the standards for granting a judgment notwithstanding the verdict and for granting a new trial, a difference which is well stated by Professor Wright in C. Wright, Law of Federal Courts, Sec. 95 at 640 (4th ed. 1983), as follows:
 
 
 5
 The motion for judgment n.o.v., like the motion for directed verdict, raises only the legal question whether there was enough evidence to make an issue for the jury. It differs from the motion for a new trial, where the court has a discretion to set aside a verdict and grant a new trial even if the verdict is supported by substantial evidence. The motion for judgment n.o.v., on the other hand, must be denied if there is any substantial evidence supporting the verdict. The credibility of witnesses and weight of the evidence, proper considerations on a motion for a new trial, are not the concern of the court on a motion for a directed verdict or for judgment n.o.v. The evidence must be viewed in the light most favorable to the party against whom the motion is made, he must be given the benefit of all legitimate inferences that may be drawn in his favor from that evidence, and the motion must be denied if, so viewed, reasonable men might differ as to the conclusions of fact to be drawn.
 
 
 6
 In Midcontinent Broadcast Co. v. North Central Air, Inc., 471 F.2d 357 (8th Cir.1973), plaintiff's television tower was struck by defendant's airplane. Liability was clear. "The sole issue at trial was the amount of profits Midcontinent allegedly lost due to the accident." Id. at 358. After the jury returned a $500,000.00 verdict in favor of plaintiff, the trial court granted judgment n.o.v. for defendant and alternatively ordered a retrial. In so doing, the trial court, which had admitted the testimony of an expert called by plaintiff to prove "lost profits," "reversed itself" and held that such "testimony should have been excluded for lack of foundation." Id. Judge Lay, in reversing the judgment n.o.v., but in remanding for a new trial and in holding that the trial court had not abused its discretion in granting a new trial, held:
 
 
 7
 In ruling on the sufficiency of evidence the trial court must take the record as presented to the jury and cannot enter judgment on a record altered by the elimination of incompetent evidence.
 
 
 8
 ...
 
 
 9
 The subsequent ruling, after the verdict, that the expert opinion was not admissible after it had been originally received and considered by the jury, placed plaintiff in a relative position of unfair reliance. If plaintiff had been forewarned during the trial that such testimony was not admissible it conceivably could have supplied further foundation or even totally different evidence. Under these circumstances the grant of the judgment n.o.v. was not a proper remedy.
 
 
 10
 Id. at 358-59.
 
 
 11
 Herein, the district court did about the same thing in a post-trial context as did the district court in Midcontinent and for the same reasons must be reversed as to its grant of judgment n.o.v.
 
 
 12
 In Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 891-92 (4th Cir. 1980), Judge Sprouse has written that in ruling upon a motion for judgment notwithstanding the verdict,
 
 
 13
 the trial court must consider the record as a whole and in the light most favorable to the party opposed to the motion. If there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a verdict for the nonmoving party, the motions should be denied, and the case submitted to the jury. [Citations omitted.]
 
 
 14
 ...
 
 
 15
 The motion for a new trial on the merits, however, requires a review of the evidence under a different standard. Under Rule 59, F.R.Civ.P., a trial court may weigh the evidence and consider the credibility of the witnesses. Indeed, a trial judge has a duty to set aside a verdict and grant a new trial even though it is supported by substantial evidence, "if he is of the opinion that the verdict is against the clear weight of the . evidence, or is based upon evidence which is false or will result in a miscarriage of justice ... " Williams v. Nichols, 266 F.2d 389, 392 (4th Cir. 1959), citing, Aetna Casualty & Surety Company v. Yeatts, 122 F.2d 350 (4th Cir.1941).
 
 
 16
 See also Gill v. Rollins Protective Services Co., 773 F.2d 592, 594 (4th Cir. 1985), modified on other grounds, 788 F.2d 1042 (4th Cir. 1986), in which Judge Ervin quoted from and relied upon Wyatt.
 
 
 17
 In Abasiekong v. City of Shelby, 744 F.2d 1055, 1059 (4th Cir. 1984), after a first trial in an employment discrimination case brought pursuant to 42 U.S.C. Secs. 1981 and 1983 had ended in a hung jury and a second trial had resulted in a jury verdict of damages for plaintiff, the district court granted defendant's motion for a judgment n.o.v. and alternatively for a new trial. Judge Murnaghan held that "[t]he evidence permitted a reasoned conclusion of discrimination on the part of defendants and that "a judgment n.o.v. is to be reversed if, 'giving [the non-movant] the benefit of every legitimate inference in his favor, there was evidence upon which a jury could reasonably return a verdict for [plaintiff],' Mays [v. Pioneer Lumber Corp.], 502 F.2d at 107 [ (4th Cir. 1974), cert. denied, 420 U.S. 927 (1975) ]. In so holding, Judge Murnaghan wrote:
 
 
 18
 In reversing the district court's grant of a judgment n.o.v. and a new trial, this Court is guided by the principles articulated in Mays v. Pioneer Lumber Corp., 502 F.2d 106 (4th Cir. 1974), cert. denied, 420 U.S. 927 (1975). In Mays, the Court adopted the view expressed in 5A Moore's Federal Practice Sec. 50.14 at 2382 (2nd ed. 1974), that "where the judgment n.o.v. is reversed and the trial court has alternatively granted the motion for a new trial, the case will ordinarily be remanded for a new trial, '[b]ut the courts of appeals have authority to order otherwise.' " (Emphasis added). The court then proceeded to reverse the district court's grant of a judgment n.o.v. and remanded with instructions to reinstate the verdict, since judicial efficiency would ill be served by permitting a third trial. Like the plaintiff in Mays, Abasiekong has also endured a first trial resulting in a hung jury and a second trial resulting in a judgment n.o.v.; and again, "two trials are enough, and indeed, all that the judicial system can presently afford." Id. at 110.
 
 
 19
 It is true that this Court has indicated its willingness to affirm the grant of a judgment n.o.v. as an appropriate "jury control device when, in the absence of a "reasonable probability" or "substantial probability" of discriminatory motive, a jury has rendered its decision for a plaintiff on the basis of "sheer speculation." Lovelace [v. Sherwin-Williams Co.], 681 F.2d at 242 [ (4th Cir. 1982) ]. By contrast, the verdict for Abasiekong reveals no juror speculation. The evidence permitted a reasoned conclusion resulting from careful consideration of the direct and indirect indicia of discrimination on the part of the City and Wilkison. Since a judgment n.o.v. is to be reversed if, "giving [the non-movantl the benefit of every legitimate inference in his favor, there was evidence upon which a jury could reasonably return a verdict for him," Mays, 502 F.2d at 107, the judgment n.o.v. in Appellees' favor must be reversed.
 
 
 20
 In ruling on Appellees' motion for a new trial, the district judge was permitted to "weigh the evidence and consider the credibility of the witnesses," and was required to grant a new trial "if he [were] of the opinion that the verdict [was] against the clear weight of the evidence, or [was] based upon evidence which [was] false or [would] result in a miscarriage of justice ...." Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 891-92 (4th Cir. 1980), quoting Williams v. Nichols, 266 F.2d 389, 392 (4th Cir. 1959). Although the action of a district court in granting a new trial is to be reversed only upon a showing of abuse of discretion,[9] the district court does appear to have abused its discretion in Abasiekong's case. The jury's verdict was not against the clear weight of the evidence, and any "miscarriage of justice" is more seriously threatened by forcing Abasiekong through the rigors of yet a third trial than by allowing the jury verdict to stand. See Lind v. Schenley Industries. Inc., 278 F.2d 79, 88-91 (3rd Cir. 1960) (a trial judge should not "denigrate" the jury system by granting a new trial on grounds of insufficient evidence and substituting his own judgment of the facts and witness credibility, particularly when the subject matter of the trial is simple and easily comprehended by a lay jury.)
 
 
 21
 9. See United States v. Horton, 622 F.2d 144, 147 (5th Cir. 1980) (per curi am) ("the grant or denial of a motion for a new trial is within the sound d iscretion of the trial court and will not be disturbed absent a clear showi ng of abuse of discretion").
 
 
 22
 Abasiekong, 744 F.2d at 1059.
 
 FACTS
 
 23
 The following Verdict Form, completed by the jury, reveals the special questions submitted to the jury and the jury's answers to those questions:[4]
 
 Question No. I
 
 24
 A. Has defendant breached its contractual obligation to diligently use reasonable efforts to promote the sale and use of Warm Window Products?
 
 Check one: Yes x
 
 25
 If your answer to Part A is Yes, continue to Part B. If your answer to Part A is No, proceed directly to Question No. 2, and do not answer Part B of this Question.
 
 
 26
 B. What damages are plaintiffs entitled to as a result of defendant's failure to diligently use reasonable efforts to promote the sale and use of the Warm Window products?
 
 
 27
 Provide dollar figure, if any, appropriate for each of the following categories:
 
 
 28
 (1) Past royalties and commissions lost as a result of defendant's breach
 
 
 29
 (a) Commissions and royalties on lost sales to former customers:--$400,000
 
 
 30
 (b) Royalties on lost sales to new customers: $100,000
 
 
 31
 (2) Future royalties and commissions lost as a result of defendant's breach
 
 
 32
 (a) Commissions and royalties on lost sales to former customers: $400,000
 
 
 33
 (b) Royalties on lost sales to new customers: $100,000
 
 Question No. 2
 
 34
 A. Are plaintiffs entitled to payment from defendant for expenses incurred in the production of the Warm Window promotional videotape?
 
 Check one: Yes x
 
 35
 If your answer to Part A is Yes, continue to Part B. If your answer to Part A is No, proceed directly to Question No. 3, and do not address Part B of this Question.
 
 
 36
 B. What damages are plaintiffs entitled to in connection with the Warm Window promotional videotape?
 
 Provide dollar figure: $7700.00
 Question No. 3
 
 37
 A. Is Mr. Chumbley liable to defendant for fraud concerning the Warm Window drapery system?
 
 Check one: No x
 
 38
 If your answer to Part A is Yes, continue to Parts B and C. If your answer to Part A is No, proceed directly to Question No. 4, and do not answer Part B of this Question.
 
 
 39
 B. Are the other plaintiffs in this action liable to defendant for fraud concerning the Warm Window drapery system?
 
 Check one: Yes No
 
 40
 C. What damages is defendant entitled to as a result of fraud committed by Mr. Chumbley or plaintiffs concerning the Warm Window drapery system?
 
 Provide dollar figure: ____
 
 41
 If your answer to Question 3A was Yes, do not consider Question 4. Consider Question No. 4 only if your answer to question No. 3A was No.
 
 Question No. 4
 
 42
 A. Is Mr. Chumbley liable to defendant for negligent misrepresentation concerning the drapery system?
 
 Check one: No x
 
 43
 If your answer to Part A is Yes, continue to Parts B and C. If your answer to Part A is No, then do not continue, do not answer Parts B and C of this Question.
 
 
 44
 B. Are the other plaintiffs in this action liable to defendant for negligent misrepresentation concerning the Warm Window drapery system?
 
 Check one: Yes No
 
 45
 C. What damages is defendant entitled to as a result of negligent misrepresentation by Mr. Chumbley or plaintiffs concerning the Warm Window drapery system?
 
 Provide dollar figure: ____
 
 46
 Consistent with those responses by the jury, the record contains evidence which would have permitted the jury to have the following findings of fact:
 
 
 47
 1. From 1980 until October 1982, WWI had made quite a good start in terms of numbers of customers and dollar sales, but was badly undercapitalized and needed the financial and marketing resources of a company like Rockland to achieve what both Chumbley and Rockland believed in the fall of 1982 was WWI's reasonably likely potential growth.
 
 
 48
 2. Contrary to the expectations of Chumbley and Rockland, the sales of WWI's products, after Rockland took over, declined.
 
 
 49
 3. Rockland did not use the reasonably diligent efforts it was contractually required to utilize to promote the sale of WWI's products as evidenced, inter alia, by one or more of the following actions:
 
 
 50
 (a) Rockland changed the names of Chumbley's products.
 
 
 51
 (b) Rockland marketed and promoted competing products.
 
 
 52
 (c) Rockland failed to promote and advertise WWI's products efficiently and appropriately.
 
 
 53
 (d) Rockland assigned promotional and marketing duties in connection with WWI's products to persons who either had reasons to give promotional preference to products other than WWI products or who were not persons competent to perform such duties.
 
 
 54
 While there was sufficient evidence upon which the jury could have determined that Rockland did not fail in any way in connection with any of those matters, there was also sufficient evidence from which Rockland could have been found by the jury to have breached its contractual duties to plaintiffs in each and all of those factual contexts. Accordingly, there was sufficient evidence in the record to enable the jury to reach the answer which its members unanimously gave to question 1A (see the Verdict Form set forth in full, supra). As previously discussed in this opinion, the district court, while harboring doubts as to liability (see the district court's Memorandum filed July 20, 1986, App. 1333), permitted the jury's answer to question 1A to stand. But as to damages, the district court set aside the damages awarded by the jury in its answer to questions 1B(1)a, 1B(1)b, 1B(2)a, 1B(2)b, and entered in its judgment order only $1.00 nominal damages. In so doing, the district court accepted as true the testimony of certain of Rockland's witnesses, rejected as not reliable and/or credible the testimony of at least some of plaintiffs' witnesses, and disregarded the testimony as to damages given by plaintiffs' expert witness, Ms. Linda McLaughlin.
 
 
 55
 After a lengthy voir dire, which featured full, probing direct examination and cross-examination of Ms. McLaughlin, the district court permitted Ms. McLaughlin to testify as an expert witness, over defendant's challenge. In his posttrial Memorandum, the district judge wrote that he "saw them [i.e., certain witnesses called by Rockland] and believes that they were telling the truth,"[5] and that the "testimony [of plaintiffs' expert witness] contained fundamental inaccuracies and was based upon assumptions not supported by the evidence" and "should have been stricken and the jury instructed that if it returned a verdict in favor of Chumbley, it should be for nominal damages of one dollar only."[6]
 
 
 56
 Earlier, during trial, before permitting Ms. McLaughlin to testify concerning two of her three alternative damage estimates, the district judge stated that he had "some ... "factual questions" about the two theories "but they're not for me to resolve, they're for the jury to resolve."[7]
 
 
 57
 The jury trial in this case took over six weeks to complete. The record is voluminous. Despite the district court's strong preference for the factual positions concerning liability taken by defendant, there was clear evidence to support the jury's special verdicts in favor of plaintiffs concerning liability. Nor did such evidence involve assessment of evidence by the jury which was very difficult for lay persons to understand. The same can hardly be said as to the testimony concerning damages. But there was evidence from which, if believed, a jury could have awarded damages not only of $1,000,000.00 but, under certain of the approaches relied upon by plaintiffs, in excess of $1,000,000.00. That would not be true if Ms. McLaughlin's expert testimony had not been received. But in this case, while the district court might originally have refused to qualify Ms. McLaughlin as an expert without abusing its discretion, cf. Midcontinnent Broadcast Co. v. North Central Air. Inc., supra, the specter of a second very lengthy trial--see Abasiekong v. City of Shelby, supra; Mays v. Pioneer Lumber Corp., supra--a second trial in which the same kind of damage issues would need to be determined by the jury--leads this court to opt for finalization and acceptance of the jury's damage awards at this time without further trial.
 
 
 58
 Accordingly, the within case is hereby remanded to the district court with instructions to strike both of its alternative orders for judgment notwithstanding verdict and for a new trial and to enter judgments for plaintiffs in accordance with the jury's answers to the special questions. In so doing, this court notes the careful, conscientious efforts of the district judge not only successfully to preside over a fair trial but to grapple with his own strong assessments of the evidence and his concomitant determination to avoid a miscarriage of justice. But the evidence in this record, as in Abasiekong, simply does not permit this court to permit negation of the jury's special verdicts.
 
 
 59
 REVERSED AND REMANDED WITH DIRECTIONS.
 
 
 60
 WILKINSON, concurring in part and dissenting in part:
 
 
 61
 I too would reverse the grant of judgment n.o.v. in this case. I would affirm the district court's decision in the alternative to grant a new trial. The discretion of the trial court is broad on the latter motion, and for the reasons amply stated in the district court's opinion, I believe the exercise of its discretion should be affirmed.
 
 
 62
 In my judgment, the majority has reinstated the jury verdicts all too readily. Such holdings tend to alter the careful balance that exists in The Federal Rules of Civil Procedure and innumerable precedents of this circuit between the function of the trial judge and the jury. In this instance, the reversal has a doubly unfortunate impact, because it tends to make those who agree to promote and market a product the virtual guarantors of its success. The effects of such rulings on our distributional network will not be salutary.
 
 Here the district court was convinced
 
 63
 that the overwhelming weight of the evidence was against the jury's verdict. Specifically, the Court is convinced that what happened is essentially what Rockland contends happened: (1) Rockland entered into signing the license agreement with Chumbley because of its primary interest in his drapery system; (2) Chumbley never was able to deliver the drapery system; (3) Rockland nevertheless did all that it could to market the Warm Window product, including taking on its payroll at substantial expense persons recommended by Chumbley; (4) to the extent that Rockland arguably may have made mistakes in its marketing efforts, Chumbley failed to prove any causal connection to his alleged damages; (5) among the reasons for the market's non-acceptance of Warm Window were decreasing consumer sensitivity to energy needs, the limited number of persons willing to purchase a do-it-yourself product and the lack of aesthetic quality in the product; and (6) Chumbley's proof of damages was, even if not legally insufficient for the reasons stated supra, fraught with inaccuracies and totally unsupported by the evidence.
 
 
 64
 I think the district court correctly set aside the verdict below as against the weight of the evidence and I would affirm that portion of its judgment.
 
 
 
 [1]
 App. 1350
 
 
 [2]
 App. 1351-52, 1356, 1376, 1380
 
 
 [3]
 App. 1346
 
 
 [4]
 App. 1325-27
 
 
 [5]
 App. 1343
 
 
 [6]
 App. 1339
 
 
 [7]
 App. 627